R. W. STORRS, APPELLANT, VS. PENSACOLA AND ATLANTIC RAILROAD COMPANY, APPELLEES.

1. The conferring authority upon the railroad commissioners of this State by the railroad commission act, being Chapter 3746, to make and fix reasonable and just rates for the transportation of freight and passengers over the railroads doing business in this State, is not prohibited by our constitution on the ground that it is the exercise of judicial or legislative power which can not be delegated to such a body.

2. Where a tariff of freight and passenger rates has been established by the railroad commissioners, and a railroad company and the commissioners differ as to whether such rates, considered as a whole, will prove remunerative to the company, and there is room for a difference of intelligent opinion on the subject, the courts can not interfere or substitute their judgment for that of the commissioners, but the tariffs as fixed by the commission must, in so far as the courts are concerned, be left to the test of experiment.

3. An allegation to the effect that the rates fixed by the commissioners for one road are unjust and unreasonable when compared with the rates permitted on other lines of railroad in this State operating under the same conditions, does not overthrow the reasonableness or justice of the rate complained of, as a rate reasonable and just in itself for one road, may not be so for another; though they connect with each other.

4. The prevention of a multiplicity of suits is a ground of equitable jurisdiction in a court of chancery; but this ground of interference can not be extended to confer upon a party remedial rights where none of any kind existed before. Its exercise necessarily assumes that the complainant in such cases has some defense, either legal or equitable, to the numerous suits instituted or threatened against him.

5. The effect of the repeal of the railroad commission law on the rights of the parties to this suit not considered.

Appeal from the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*Liddon & Carter* for Appellant.

*W. A. Blount* for Appellee.

MABRY, J.:

The Pensacola & Atlantic Railroad Company, appellee before this court, filed a bill against D. L. McKinnon, R. W. Storrs and E. W. Mooring, to restrain them from prosecuting certain suits at law before a Justice of the Peace and in the County Judge's Court of Jackson county, State of Florida, against appellee. McKinnon instituted eight of these actions before a Justice of the Peace, and one before the County Judge, each for one hundred dollars. Storrs commenced three similar suits before the Justice of the Peace, and Mooring two cases before the Justice of the Peace, and one in the County Judge's Court, each for one hundred dollars, and these actions were pending when the bill was filed. These suits were instituted to recover an excess demanded and received by appellee over and above the rates fixed by the Railroad Commissioners of the State of Florida, for it to charge for the transportation of freight and passengers in this State. After the granting of an interlocutory injunction, Storrs

demurred to the bill, and upon this being overruled, he brings the decree of the chancellor here for review. The object of the bill is to perpetually enjoin McKinnon, Storrs and Mooring from further prosecuting their said suits, and to restrain all other persons insisting on similar demands against appellee from instituting suits to enforce the same.

It appears from the bill that appellee is a railroad corporation organized under Chapter 3335, Laws of Florida, and has constructed a railroad one hundred and sixty-one miles long, from the city of Pensacola to River Junction, in this State, and the road was completed in April, 1883. It is alleged that Railroad Commissioners, duly appointed and acting under the Railroad Commission law of this State, approved June 7th, 1887, Chapter 3746, have fixed rates for freight and passenger transportation on railroads doing business in this State, including that of appellee, which they have determined to be just and reasonable for such roads to charge, and have by their orders directed said railroad companies not to charge more.

Appellee states in its bill that it has not limited itself to the rates fixed by the Commission, either in the transportation of freight or passengers, and has on divers occasions charged more than the said rates so fixed by the Railroad Commission, but avers that the rates charged both for freight and passengers were just and reasonable, and in no instance has it charged for

the transportation of passengers more than five cents per mile, the rate authorized by its charter.

The bill further alleges that said Railroad Commissioners have not the power to determine the justice or reasonableness of the charges for services by appellee, because such power involves the exercise of judicial functions, which the Commissioners are inhibited from exercising by Article II, Article V, Section 1, and Article V, Section 30, of the Constitution of the State of Florida. It is also averred that "if said functions are not judicial, they are legislative, and not exercisable by the said Commissioners, under the Constitution of the State of Florida." This presents the first point for our consideration of this record.

The second article of the Constitution distributes the powers of government into three departments—"legislative, executive and judicial"—and it provides that "no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this Constitution." Section 1 of Article V provides that "the judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges and Justices of the Peace." Section 30 of Article V relates to the election of Clerks for Criminal Courts of Record that may be established in each county, and other matters which can have no bearing upon the questions involved here. There is

JANUARY TERM, 1892.        621

R. W. Storrs v. Pensacola & Atlantic R. R. Co.—Opinion of Court.

another provision of the Constitution which should be referred to in this connection : Section 30 of Article XVI provides.that "the Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property or performing other services of a public nature, and shall provide for enforcing such laws by adequate penalties or forfeitures." After the adoption of the Constitution of 1885, containing the foregoing provisions, the Legislature enacted Chapter 3746, Laws of Florida, being the statute by virtue of which the Railroad Commissioners of the State fixed the rates to be charged by appellee for the transportation of freight and passengers over its railroad. The purpose and scope of this statute are disclosed by its title, "An act to provide for the regulation of railroad freight and passenger tariffs in this State, to prevent unjust discrimination in the rates charged for transportation of passengers and freights, and to prohibit railroad companies, corporations and lessees in this State from charging other than just and reasonable rates, and to punish the same, and prescribe a mode of procedure and rules of evidence in relation thereto; and to appoint Commissioners, and to prescribe their powers and duties in relation to the same." The third section of this act provides, in substance that if any railroad corporation doing business in this State shall wilfully charge and receive more

than a fair and reasonable rate of toll or compensation
for the transportation of passengers and freight over
its line of road, the same shall be deemed guilty of ex-
tortion, and upon conviction, to be dealt with as pro-
vided in the act.   Under the fifth section of this act
the Commissioners are authorized and commanded, in
the manner provided in the sixth section, to "make
and fix reasonable and just rates of freight and pas-
senger tariffs to be observed by all railroad companies
doing business in this State."   There are other pro-
visions in this statute, but it is unnecessary to refer to
them.   Is the delegation of power by this statute to
the Commissioners to make and fix reasonable and
just rates for the transportation of freight and passen-
gers over the railroads doing business in this State,
prohibited by our Constitution on the ground that it is
the exercise of judicial or legislative functions which
can not be conferred upon such a body?   This is the
precise point presented by the part of the bill now be-
ing considered.   Mr. Justice Field says in the opinion
of the Supreme Court in the case of Georgia Banking
Company vs. Smith, 128 U. S., 174, that "it has been
adjudged by this court in numerous instances that the
Legislature of a State has the power to prescribe the
charges of a railroad company for the carriage of per-
sons and merchandise within its limits, in the absence
of any provision in the charter of the company consti-
tuting a contract vesting in it authority over those
matters, subject to the limitation that the carriage is

not required without reward, or upon conditions amounting to the taking of property for public use without just compensation, and that what is done does not amount to a regulation of foreign or interstate commerce.'' The cases of Stone vs. Farmer's Loan & Trust Co., 116 U. S., 307, and Dow vs. Beidleman, 125 U. S., 680, are cited. There can be no question, under our Constitution, about the power of the Legislature to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by common carriers in transporting persons and property in this State, because sec. 30, Article XVI, expressly confers it. If it is competent for the Legislature to confer this power upon a Board of Railroad Commissioners, it settles the point of objection sought to be made by the part of the bill now under consideration. This point was raised and settled in favor of the right of the Legislature to confer such power upon Commissioners, under the Georgia Railroad Commission law, which, in this respect, is similar to ours. Georgia Railroad Banking Co. vs. Smith, 70 Ga., 694; Tilley vs. Railroad Commissioners, 4 Woods (Ct. Ct.), 427. The identical question has been settled in our own court in the case of McWhorter vs. Pensacola & Atlantic Railroad Co., 24 Fla., 417, 5 South. Rep., 129, where it was held that the act in question conferring on a Commission authority to regulate the charges of railroads for transportation of passengers and freights is not a delegation of legislative power forbidden by

the Constitution of this State. In view of this decision it is not necessary to devote any further attention to the phase of the bill seeking to present this objection.

A further objection is made in the bill to the rates which it is alleged the Commissioners have fixed and determined upon to be charged by appellee for transporting freight and passengers over its road. This objection does not go to the right of the Commissioners to make and fix rates for appellee's road, but it seeks to question the reasonableness and justice of the rates fixed, and it is averred that said rates are neither just nor reasonable for reasons which are set out in detail. The case made by appellee to show the rates are unreasonable and unjust is substantially this : It completed its line of road from the city of Pensacola to River Junction, a distance of one hundred and sixty-one miles, in April, A. D. 1883, at which time it began to operate the same, and has continued to do so to the time of the filing of the bill, which was on the 25th day of June, A. D. 1888 ; that the Railroad Commissioners of the State of Florida, appointed and acting under Chapter 3746, Laws of Florida, have fixed for freight and passenger transportation over the railroads doing business in the State of Florida, including that of appellee, rates which they have determined to be just and reasonable, and have directed the said several roads, including appellee, not to charge any rates greater than those so fixed and determined by the

Commission; that the Commissioners have fixed a uniform rate for transportation of passengers over appellee's road of three cents per mile, and have fixed rates for the transportation of freight, varying with the distance, which said freight is to be transported with certain arbitrarily adopted classifications of the various kinds of freight. The Commissioners fixed said rates in spite of the presentation to them of facts hereinafter mentioned and argument based thereon, and appellee protested against their enforcement, but they refused to change them, and thereupon an appeal was taken to the Board of Revisors provided for in said act of the Legislature, and the said action of the Commissioners was confirmed. That appellee has not, for reasons to be hereinafter stated, limited itself to the rates thus fixed by the Commission, and has on divers occasions charged both for freight and passenger transportation more than the said rates, but the rates so charged by appellee were just and reasonable, and in no instance has it charged for the transportation of passengers more than five cents per mile, the rate authorized by its charter. That although the charges by appellee have been much greater than those permitted by the rates fixed by the Commissioners, and have yielded a much larger gross income than would be realized from the rates prescribed by said Commissioners, it has failed to realize any interest upon its investment, and has failed to realize enough from the operation of

40

626            SUPREME COURT.

R. W. Storrs v. Pensacola & Atlantic R. R. Co.—Opinion of Court.

its railroad to meet the necessary expenses connected with its said operation and the ownership thereof. That the construction and equipment of appellee's road cost the sum of $3,345,116.80, which was and is the actual value of labor and material in the construction and equipment of same. That the operation of said road from the time of its construction and equipment in April, 1883, to the time of filing the bill, has been prudent, economical and judicious, yet during the four and one-fourth years intervening the construction of the road and June 30th, A. D. 1887, the gross earnings of the road exceeded in the aggregate the bare expenses of its operation (including taxes and excluding any interest paid) only in the sum of $52,-662.50, and that the cost of actual and necessary repairs and current equipment largely exceeded the said sum of $52,662.50, and thus absorbed the small apparent excess of earnings over expenses, and causes an actual loss from the operation of the said road.

That during the year ending June 30th, 1887, the excess of the operating expenses of the said road (not including taxes, which amounted to $17,069.15) over the income from all sources from the operation thereof was $4,234.52, and during the period from June 30th, 1887, to March 1st, 1888 (to which latter date only the receipts and expenditures have as yet been compiled), the excess of operating expenses of said road over its income from all sources from the operation thereof has been the sum of $15,684.87.

That during no year of the operation of the road has the receipts from the transportation of passengers sufficed to pay for the cost of such transportation, and that during no year of such operation has the receipts from the transportation of freight sufficed to pay the expenses thereof; that not only has there been in the past a yearly deficit as aforesaid, but that in all human probability will that deficit continue for some years to come, for the completion of lines of road having a shorter distance to operate between desirable points to be reached over appellee's road must prevent in large measure any increase of through business, or an increase of rates therefor; and also the sparseness of the population, and meagreness of the products to be shipped by rail in the country through which said road runs, will prevent in a large measure any increase in the value of local business.

It is further alleged that West Florida, through which said road runs, has only eight inhabitants to the square mile, and along the entire route of the road from Pensacola (a city of twelve to fifteen thousand inhabitants) to River Junction, there are but two towns exceeding one thousand inhabitants, and but three which exceed two hundred and fifty inhabitants, and the main staple for shipment is lumber, for the transportation of which numerous streams vie with appellee's road at a rate much cheaper than appellee can afford, so that the present proportion between the earnings and expenses of appellee will not apparently

be changed in the near future ; that the rates over appellee's road from points off the same to points thereon, and from points thereon to points off the same, are fixed and determined by competition upon a basis much lower than those fixed by the Commissioners, and can not be increased by appellee.

That at the beginning of the partial operation of the road, from August, 1883, to February 1st, 1885, the local rates were as follows :

Agents—1st class rates, $4\frac{1}{2}$ cents per mile.
Agents—2d class rates, $3\frac{1}{2}$ cents per mile.
Conductors—1st class rates, 5 cents per mile.
Conductors—2d class rates, 4 cents per mile.
Round trip rate, 7 cents per mile.

That during the existence of these rates nearly 90 per cent. of the persons traveling on said road, traveled on the $3\frac{1}{2}$ cent rate, and those rates were found to be entirely unremunerative, and the $3\frac{1}{2}$ and 4 cents, and the round trip rates were abolished on the first of June, 1885. That such change did not result, and has not resulted, in the decrease in the number of local passengers, but immediately upon such change the gross income from the transportation of such passengers, which had prior thereto been not only unremunerative, but practically of unvarying amount, increased fifteen per cent. for the ensuing year, which increase has been maintained with uniformity since that time.

That at the beginning of the completed operation of the road, appellee established rates of local freight at a

rate deemed by it to be remunerative, which continued in force till January, A. D. 1885, when, to induce transportation, appellee reduced its freight rates upon those commodities constituting more than three-fourths of the freight, to a point much below the former rates, although above the rates fixed by the Commission, but this reduction did not cause, and has not caused, any increase in the quantity of freight transported, or in the gross income therefrom, but the income decreased, and has remained less than it was before the reduction.

That not only are the said rates unreasonable and unjust as aforesaid, but they are also unreasonable and unjust when compared with rates permitted by the said Commissioners upon lines of railroad in the State of Florida, existing and operating under the same conditions as those under which the appellee exists and operates, e. g., upon the line of the Florida Railway & Navigation Company, which connects directly with appellee's road. The rates upon this road, including that part in direct connection with appellee's road, are for class "D" of freight, as fixed by said Commissioners:

For 10 miles, 16 cents per 100,

For 30 miles, 16 cents per 100,

and upon the line of appellee's road as follows:

For 10 miles, 8 cents per 100,

For 30 miles, 8 cents per 100,

and upon other classifications of freight made by said Commissioners the like unreasonable and unjust rates have been fixed for appellee's road.

That a reduction by appellee of its rates for transportation of freight and passengers to the rates prescribed by the said Railroad Commission would compel it to forego any possibility of earning any interest upon its investment in said railroad, or any income from the same from the operation thereof, and to continue its operation at an actual irretrievable loss, and would render said railroad valueless to appellee either for purposes of operation or for purposes of sale. And appellee is advised and believes that it is not competent for the said Commissioners by their action under said law to produce such result, for that thereby appellee is deprived of its property without due process of law, in contravention of the provisions of the Constitution of the State of Florida, and of Section 1, Article IV, of the Constitution of the United States.

With the exception of the averment that the rates fixed by the Commission for appellee's road are unreasonable and unjust when compared with rates permitted by said Commissioners upon railroads in the State of Florida, existing and operating under the same conditions as those under which appellee's road exists and operates, the allegations of the bill, as to just and reasonable rates, are in substance the same as those contained in the fourth plea filed by appellee in the case of Pensacola & Atlantic R. R. Co. vs. State, 25 Fla., 310 ; 5 South. Rep., 833, and which was held not to be a good plea by this court. Upon substantially the same state of facts it was said they were "rather the expression of opinions and apprehensions than

facts admitted by the demurrer." The bill alleges that the Commissioners have determined the rules which they have fixed for appellee to be just and reasonable. In Pensacola & Atlantic R. R. Co. vs. State, *supra*, it was decided that "where a tariff of freight and passenger rates has been established by the Railroad Commissioners, and the railroad company and the Commissioners differ as to whether such rates, considered as a whole, will prove remunerative to the company, and there is room for a difference of intelligent opinion on the question, the courts cannot interfere or substitute their judgment for that of the Commissioners, but the tariffs as fixed by the Commissioners must, in so far as the courts are concerned, be left to the test of experiment." Under this decision the allegations of the bill now being considered would constitute no defense in an action at law.

The further averment that the rates so fixed by the Commissioners are unjust and unreasonable when compared with the rates permitted on other lines operating under same conditions as those under which appellee operates its road, can not be held to overthrow the reasonableness or justice of the said rates fixed by the Commissioners. The statute directs the Commissioners to make for each of the railroads doing business in this State a schedule of just and reasonable rates of charges for the transportation of passengers and freights over each road. Under this statute each road is entitled to have a just and reasonable rate, but a rate reasonable and just in itself for one

road, may not be so for another, though they connect with each other.

In Chicago, B. & Q. R. R. Co. vs. Iowa, 94 U. S., 155, it is said: "It is very clear that a uniform rate of charges for all railroad companies in the State might operate unjustly upon some. It was proper, therefore, to provide in some way for an adaptation of the rates to the circumstances of the different roads; and the general assembly, in the exercise of its legis-lative discretion has seen fit to do this by a system of classification. Whether this was the best that could have been done is not for us to decide. Our province is only to determine whether it could be done at all and under any circumstances. If it could, the Legis-lature must decide for itself, subject to no control from us, whether the common good requires that it should be done." The State statute, the vitality of which was questioned in this case, divided the railroads in the State into classes, according to business, and es-tablished a maximum rate for each class. A statute in Arkansas fixed the maximum fare for the transpor-tation of passengers over railroads in that State, ac-cording to the length of the road. The Supreme Court of the United States, in Dow vs. Beidleman, 125 U. S., 680, held the statute to be valid. It is said in the opinion: "It is equally clear that the plaintiffs in er-ror have not been denied the equal protection of the laws. The Legislature, in the exercise of its power of regulating fares and freights, may classify the rail-roads according to the amount of the business which they have done, or appear likely to do. Whether the

JANUARY TERM, 1892.     633

R. W. Storrs v. Pensacola & Atlantic R. R. Co.—Opinion of Court.

classification shall be according to the amount of passengers and freight carried, or of gross or net earnings, during a previous year, or according to the simpler and more constant test of the length of the line of the railroad, is a matter within the discretion of the Legislature. If the same rule is applied to all railroads of the same class, there is no violation of the constitutional provision securing to all the equal protection of the laws.'' The allegation in the bill before us is that the rates are unreasonable and unjust when compared with rates permitted by the Commissioners upon lines of railroad in the State of Florida existing and operating under the same conditions as those under which the road of appellee exists and operates, and an example is given in the rates fixed for the Florida Railway & Navigation Company and appellee, which connect with each other. We are not informed of the facts upon which the Commissioners fixed the rates for the other lines of railroad; nor is it even alleged that these rates are reasonable and just. Two roads may operate under the same conditions, that is, the same mode of existence, or the same state or situation, with regard to external circumstances, and still many things may exist in connection with one which would determine a reasonable rate for it different in amount from that of the other. The cost of construction, the length of the road, amount of traffic, and many other things may properly enter into a consideration of what is a reasonable rate. The bill, in our judgment, fails to show facts which would avail appellee as a defense at law in the actions sought to be enjoined.

634    SUPREME COURT.

R. W. Storrs v. Pensacola & Atlantic R. R. Co.—Opinion of Court.

As before stated, the bill is filed against three persons to restrain them from further prosecuting certain suits at law. It is therein alleged, however, that numerous other persons have announced their intention and are preparing to bring suits against appellee for damages because of charges made by it against said persons in excess of the rates fixed by the Railroad Commission for the transportation of freight and passengers over its road, and that suits will continue to be brought so long as such rates are charged. The principle of equity invoked to sustain this bill is the prevention of a multiplicity of suits. It is contended that where a large number of persons have similar demands against one, he can by bill filed against some of them restrain the proceedings of all until the question of the validity of the claims has been decided. A reading of the bill discloses the fact that no community of title or right, or joint interest in the subject-matter of the suit is alleged in the persons sought to be enjoined, but it does appear that there is a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind of relief asked against each individual person insisting on similar claims against appellee. In view of the fact that the bill fails to allege any sufficient defense either at law or in equity on the part of appellee against the suits instituted or threatened, it becomes unnecessary for us to decide whether or not its allegations are sufficient in other respects to justify the interposition of the court of chancery by injunction. The jurisdiction of chancery to prevent a multiplicity

JANUARY TERM, 1892.    635

R. W. Storrs v.  Pensacola  &  Atlantic R. R.  Co.—Opinion of Court.

of suits can not be extended to confer upon a party remedial rights where none of any kind existed before.    Its exercise necessarily assumes that the complainant in the class of cases before us has some defense either legal or equitable to, the numerous suits instituted or threatened against him.    Mr. Pomeroy, in his work on Equity Jurisprudence, sec. 250, says: "In the first place, and as a fundamental proposition, it is plain that prevention of a multiplicity of suits is not, considered by itself alone, an independent source or occasion of jurisdiction, in such a sense that it can create a cause of action where none at all otherwise existed.    In other words, a court of equity can not exercise its jurisdiction for the purpose of preventing a municipality of suits in cases where the plaintiff invoking such jurisdiction has not any prior existing cause of action, either equitable or legal; has not any prior existing right to some relief, either equitable or legal.    The very object of preventing a multiplicity of suits assumes that there are relations between the parties out of which other litigations of some form might arise.    But this prior existing cause of action, this existing right to some relief of the plaintiff, need not be equitable in its nature."

As we have already seen, appellee shows no defense to the actions at law, and hence no foundation is laid to authorize the writ to restrain said suits.    The authorities cited by counsel for appellee are not in conflict with this view.    They go to the extent of holding that where a complainant shows a defense to numerous suits instituted against him at law by a large

number of persons having similar legal ·claims, a bill may be filed against some of them to restrain the proceedings of all until the· validity of the defense has been decided. The bill in the case before us does not show any defense to the legal actions. We note that the Railroad Commission law of this State, Chapter 3746, has been repealed since this cause has been brought to this court. The effect of this repeal on the rights of the parties has not been considered by us in arriving at the conclusions here announced. This is a matter which, if it has any effect at all, may arise in the future litigation between the parties.

The demurrer should have been sustained. It is therefore ordered that the decree of the chancellor overruling the demurrer be reversed, with directions that the case be remanded, and that an order be entered sustaining the demurrer.