SARA V. TOMLINSON v. ARMOUR & COMPANY.

Submitted December 6, 1906—Decided February 25, 1907.

1. At common law on a sale of food articles to a dealer in provisions there was no implied warranty of wholesomeness. Assuming that a different rule exists in the case of a sale by such dealer to a consumer, the latter, in the absence of a statute, cannot hold the original vendor to a higher degree of duty than that cast upon him by the common law with respect to his own vendee.

2. To select out of an entire class of transactions, covered by a well-established rule of the common law, a single member for the imposition of a different rule, based upon considerations of public welfare, is essentially a legislative function.

3. A declaration alleged that the defendant had packed diseased ham in a can and had sold it to a retail dealer, of whom it was bought by the plaintiff, who, from eating a piece of such ham, became sick. *Held,* that these facts did not state a cause of action by the plaintiff against the original vendor.

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and GARRETSON.

For the plaintiff, *Carrow & Kraft*

For the defendant, *Gaskill & Gaskill.*

The opinion of the court was delivered by

GARRISON, J. This is a demurrer to a declaration. Reduced to narrative form, the essential allegations of the declaration are that Armour & Company were engaged in the business of canning and vending ham for food and that it was their duty to put up only wholesome and edible ham, but that in disregard of this duty they negligently put in a certain can diseased ham that was deleterious to health, and sold said can to a retail dealer, of whom the plaintiff purchased it for food, and upon eating a piece of the ham was rendered sick of ptomaine poison.

The pleader, it will be observed, avers, in general terms, the existence of a duty, and by means of certain adverbs characterizes the defendant's performance of that duty as negligent. &c. Nothing is added to the legal force of the declaration by such averment or by such characterization, which are exclusively the conclusions drawn by the pleader from the facts stated. With the facts before us we ourselves must ascertain their legal efficacy. Such is the object of a demurrer.

The transaction described by the declaration was a sale of an unwholesome food product. The liability of the defendant, as the original vendor of such product, is claimed to be due, not to his own vendee, but to the plaintiff as the vendee of such vendee. It would seem to be clear, therefore, that if the original vendee may be thus eliminated and his place be taken by the plaintiff, her rights can rise no higher than those of the vendee in whose shoes she stands. From this it follows that if the duty sought to be raised by the pleader on

behalf of the plaintiff is greater than that raised by the law on behalf of the vendee, the averment of such duty to the plaintiff is without legal foundation, unless, of course, such duty is imposed by some public law. Admittedly, however, there is no statutory basis for the plaintiff's action. The pertinent question, therefore, is what was the liability at common law of a vendor who sold unwholesome provisions to a dealer who bought them to sell to consumers?

At common law, the general rule was that in a sale of provisions there was no implied warranty that they were wholesome. Blackstone, it is true, states directly to the contrary (3 *Bl. Com.* 165), but he cites no authority for his assertion, which, when cited to the Court of Exchequer, in Emmerton *v.* Mathews, was not accepted by Chief Baron Pollock as correctly stating the common law. *Emmerton* v. *Mathews, 7 Hurlst. & N.* 587.

Mr. Chitty, in his work on contracts (*Chit. Con.* 420), repeats Blackstone's statement, interpolating after the word "provisions" the words "to dealers and common traders in provisions," and in a note to the ninth edition it is suggested that Emmerton *v.* Mathews, in so far as it contradicted Blackstone's statement, was not the law.

Mr. Benjamin, however, points out that inasmuch as Blackstone himself stated that the remedy in such case was by "an action in deceit," which assumes *knowledge* of the unwholesomeness on the part of the vendor, Emmerton *v.* Mathews, when applying the maxim *caveat emptor* to the sale of articles of food, did not contradict the earlier common law authorities. *Benj. Sales,* § 671.

The repudiation of Blackstone's statement in Emmerton *v.* Mathews is sustained by the judgment of Baron Parke, in *Burnby* v. *Bollett, 16 Mees. & W.* 644, where all the old authorities were collected and cited in argument. The conclusion from these cases was that whatever might be the exception to the rule of *caveat emptor,* where provisions were sold for household and immediate consumption, it did not extend to sales made in the course of general and commercial transactions.

In the United States, this rule of the common law, where not affected by legislation, prevails at least to this extent— that no warranty of soundness or wholesomeness arises from a sale of food provisions to a dealer or middleman who buys, not for consumption, but for sale to others. 15 *Am. & Eng. Encycl. L.* 1237, and cases cited.

In the case of a sale by a retail victualer directly to a customer for immediate consumption the rule is different, and various theories have been propounded to account for this difference, the most plausible of which is that suggested by Chief Justice Shaw, in *Winsor* v. *Lombard,* 18 *Pick.* 57, viz., that the retail vendor of food for domestic consumption is, from the nature of his calling, presumed to know whether a given article is sound and wholesome. In which case *scienter* would constitute the ground of the distinction.

In view of the established rule of the common law touching the sale of provisions to general dealers, the declaration before us is anomalous to this extent, viz., that by force of a rule that applies only to purchases made for immediate consumption it seeks to cast upon a vendor who sold only to general dealers a liability that is not within the common law rule touching such sales. That the plaintiff cannot maintain her action upon this theory must be apparent.

The form of the plaintiff's action, viz., *in tort,* would seem to indicate that the pleader had in mind the breach of some duty imposed upon the defendant from considerations of public policy. Doubtless such a duty may be imposed by statute, and it may well be that the business of selling canned food presents a proper field for the exercise of such legislative activity. But when an entire class of transactions are covered by a well-established rule of the common law, it is no part of the judicial function to select a member of such class for the imposition of a different rule based upon considerations affecting the public welfare.

It has not been overlooked that the commercial business of sealing up food products by the processes of "packing" and "canning," and the vending of such products, were unknown when the common law rule we have been considering was

established, and also that the maxim *caveat emptor,* based, as it is, upon the mutuality of the opportunity of inspection by vendor and vendee, is inapplicable to the case of hermetically sealed goods. These considerations, and others that might be added, point strongly toward the exception of this class of food products from the rule of *caveat emptor,* as we have inherited that doctrine from the common law. Considerations of public health and comfort may even imperatively require such an alteration of the established law, but the fact, nevertheless, remains that alterations of established law, based upon such considerations, are essentially legislative in character. To apply the law as it is found to be established is essentially the duty of the courts.

Judged by this criterion, the facts stated in the present declaration trace no duty of the defendant to the plaintiff, either through the medium of the private transaction of sale or as an enforceable public right. Upon this ground, therefore, the demurrer to such pleading must be sustained.

The result thus reached is in substantial harmony with the cases cited from other jurisdictions in the brief of the defendant's counsel. *Julian* v. *Laubenberger,* 16 *Misc.* (*N. Y.*) 646; *Cotton* v. *Reed,* 25 *Id.* 380; *Howard* v. *Emerson,* 110 *Mass.* 320; *Giroux* v. *Stedman,* 145 *Id.* 439; *Weideman* v. *Keller,* 171 *Ill.* 93.

The cited cases holding to the contrary were almost without exception properly decided upon their facts (whatever may be thought of their reasoning), being for the most part either cases of *scienter* and deceit or of dealings in poisons and the like, or else cases that fall within the exception we have noted respecting caterers and victualers of that sort.

The ground upon which the demurrer is sustained was properly raised in the record. The other grounds assigned and argued concern matters available only on special demurrer, and for that reason can be taken advantage of only upon a motion to strike out. *Race* v. *Easton and Amboy Railroad Co.,* 33 *Vroom* 536; *Minnuci* v. *Philadelphia and Reading Railroad Co.,* 39 *Id.* 432.

Judgment in demurrer is for the defendant, with costs.