THE STATE OF FLORIDA, *Plaintiff in Error*, v. ATLANTIC COAST LINE RAILROAD COMPANY, *Defendant in Error*.

| | |
|---|---|
| 56 | 617 |
| 57 | 205 |
| f57 | 525 |
| f57 | 528 |
| 56 | 617 |
| f58 | 259 |
| f58 | 296 |
| f58 | 297 |
| f60 | 176 |
| f60 | 177 |
| f60 | 473 |

1. In order to justify the courts in declaring invalid as a delegation of legislative power a statute conferring particular duties or authority upon administrative officers it must clearly appear beyond a reasonable doubt that the duty or authority so conferred is a *power* that appertains *exclusively* to the legislative department, and the conferring of it is not warranted by the provisions of the constitution.

2. The power accorded the legislature by the constitution for the purpose of regulating intrastate transportation by common carriers is not confined to making rules and regulations. The legislature has authority to do or to cause to be done everything in any manner and by any means requisite to the complete and effectual exercise of the power possessed that is not an undoubted violation of some other provision of the constitution.

3. The constitution should be interpreted so as not to render impotent or inoperative, but so as to preserve and make effective, the sovereign power of the State in regulating intrastate transportation by common carriers; and the specific provision of the constitution that the legislature has power to pass laws to correct abuses, and to prevent unjust discriminations and excessive charges by common carriers and others engaged in rendering service of a public nature, should be so applied as to accomplish the purposes expressed therein.

4. The legislature may not delegate the power to enact a law, or declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of the law is peculiarly applicable to the regulation of common carriers, since the complex and ever-changing conditions that attend and affect such a service make it impracticable for the legislature to prescribe all necessary rules and regulations.

5. Authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature and its use ·by administrative officers. is essential to the complete exercise of the powers of all the· departments.

6. The exercise of some authority, discretion or judgment may be incident or necessary to the performance .of administrative or ministerial duties; but such authority, discretion or judgment is subject to judicial review; and it is not among the powers of government that the constitution separates into departments.

7. The common law duties of common carriers are ascertained by the application of legal principles to particular facts. The Statutes of the State do not define all the duties of common carriers, but expressly authorize the railroad commission to make reasonable and just rules and regulations to carry into effect the legislative purpose to regulate intrastate transportation by common carriers.

8. The legislature may not delegate the power to make a law prescribing a penalty, but it is competent for the legislature to authorize the railroad commission to prescribe duties upon which the law may operate in imposing a penalty and in effectuating the purpose designed in enacting the law. Where a penalty is imposed by law, it may be incurred for the penal violation of a rule prescribed by the railroad commission within their express authority.

9. Even if the provisions contained in the railroad commission statute relate to the disposition of the proceeds of fines or penalties recovered, and for the suspension or remission of fines or penalties, be in conflict with the constitution, such provisions may be eliminated without impairing the usefulness of the valid portions of the law for the purposes intended, and without causing results affecting the main purpose of the law in a manner contrary to the intention of the legislature; and it cannot be said the law-makers would not have enacted the statute without the invalid and unnecessary portions. The disposition of fines recovered is controlled by existing valid laws. The constitution provides for the remission and disposition of fines, and affords a guaranty against excessive fines.

10. In view of the organic provisions relating to common carriers, and to conferring judicial powers upon the railroad commission, the constitutional right to jury trial is not beyond a reasonable doubt, violated by the imposition by the commission of a penalty or fine prescribed by law for the penal violation of rules provided for regulating a public service, when the fine or penalty is recoverable only by action at law, in a jury trial, where any defense the carrier has may be interposed in the action to recover the penalty.

11. The regulation of intrastate transportation by common carriers is the exercise of the inherent and reserved power of the State. While the constitution expressly authorizes the regulation of common carrier corporations, it also expressly provides for the protection of property rights against unlawful invasion whether under the guise of regulation of a public service or otherwise.

12. An arbitrary and unreasonable regulation is not within the authority of the railroad commission. If the action of the state through the railroad commission is not a legally authorized regulation of public service, or if the authorized regulation is arbitrary and unreasonable, and in effect deprives the beneficial owners of property used in rendering the public service of the property rights in a manner or to an extent contemplated by law as a limitation upon the rights of those devoting their property to a public use, such action, though under the form of regulation, is in law a deprivation of property without due process of law in violation of the state constitution.

13. The railroad commissioners are statutory officers whose powers are special and limited. They can exercise only such authority as is legally conferred by express provisions of law or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purposes for which the offices were established.

14. When it can be fairly done, a rule adopted by the railroad commissioners should be so construed and applied as to make it conform to the powers conferred upon the commissioners, rather than as being an assumption of power not conferred.

15. Under the power given the railroad commissioners to require common carriers to furnish all necessary facilities for the convenient and prompt handling, transportation and delivery of all freight offered for transportation, and to provide and prescribe all rules and regulations necessary to secure the furnishing of such facilities and transportation and delivery of all freights offered, to direct and control all matters pertaining to railroads that shall be for the good of the public, and to do and perform any act or thing necessary to be done to effectually carry out and enforce the provisions of the railroad commission law, the commissioners are authorized to adopt a rule making all railroads liable to a shipper in a charge of one dollar per day per car for detaining cars properly loaded and shipping instructions given in violation of the commission rules. Such a charge is not a penalty, but is a monetary obligation incurred for breach of duty that may be enforced by the shipper to which it is due.

16. The liability or charge prescribed by the rule of the railroad commissioners making the carrier liable to the shipper in the sum of one dollar per day per car for the unlawful detention of loaded cars, does not appear to be excessive or unreasonable or unjustly discriminatory; but it may be considered to be and may in fact be a reasonable and salutary means to prevent or to aid in preventing unjust discriminations and abuses in intrastate shipments, which is the purpose of the constitution and the railroad commission law. The rule is general in its terms and is applicable alike to all under similiar conditions. Only railroads use cars in transporting freight.

17. If a valid excuse exists for not obeying a rule of the railroad commission, there is no penal violation of it; and the rule cannot legally be so applied as to directly and materially burden interstate commerce, or so as to deprive the carrier or the shipper of any rights afforded by the law.

18. Even if it be competent for the legislature to impose a penalty upon a carrier alone for a refusal to pay a pecuniary liability, in the absence of valid, explicit enactments, a penalty may not be incurred for merely refusing to pay an amount for which only a liability in the nature of a charge for failing to perform a legal duty is created by the rule, in the payment of which liability the public is not concerned. A penalty is not incurred

under the statute for refusing to pay a penalty or for refusing to pay a charge imposed under the commission rules.

19. The particular powers and duties prescribed in other acts were not intended to affect and do not affect the powers and duties of the commission, as defined by the railroad commission statute and the amendments thereto. The constitution and the statute contemplate cumulative remedies to make effective the general purpose of regulating intrastate transportation by common carriers.

20. Penalties may be incurred by a railroad company under the statute for the penal violation of prescribed duties peculiar to such companies, but the statute does not provide for incurring a penalty for mere refusal to pay a monetary liability imposed by a rule of the railroad commission.

This case was decided by the court En Banc.

Writ of Error to the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the court.

*L. C. Massey,* for plaintiff in error;

*W. E. Kay, Sparkman & Carter, Geo. P. Raney* and *Blount & Blount & Carter,* for defendant in error.

WHITFIELD, J.—This action was begun in the circuit court for Orange county under section 2908 of the General Statutes by the Railroad Commissioners in the name of the State to recover penalties fixed and imposed under the Railroad Commission law upon the railroad company for alleged violations of Demurrage Rule 8 of the Commission Rules in refusing to pay liabilities to a shipper incurred under the rule. In sustaining a demurrer to the

declaration the trial court held that Demurrage Rule 8 is unreasonable and denies the defendant due process of law. Final judgment for the defendant was entered on the demurrer. The State took writ of error and assigns as errors the order sustaining the demurrer and the final judgment.

The questions presented for determination are: (1) Whether the Railroad Commission statute or Demurrage Rule 8 violates the provisions of the State constitution relating to the exercise of legislative power, to penalties, to jury trials and to taking property without compensation and without due process of law; (2) whether the statute or the rule, in violation of the Federal constitution, deprives the carrier of property without due process of law, or denies to the carrier the equal protection of the laws, or directly and materially burdens interstate commerce; (3) whether the legislature intended to authorize the adoption of Demurrage Rule 8, and to enforce it by penalties. The questions raised here as to the validity of the statute and the rule are similar to those presented in the case of State v. Seaboard Air Line Railway this day decided, and this discussion of such similar points will suffice for both cases.

A direct exercise by the legislature of the police power is in accordance with immemorial governmental usage. But the subject-matter may be such that only a general scheme or policy can with advantage be laid down by the legislature, and the working out in detail of the policy indicated may be left to the discretion of administrative or executive officials. McGehee Due Process of Law, 366, and authorities cited.

The constitutionality or statutory provisions authorizing executive or administrative officers or boards to formulate rules and regulations to make the statute ef-

fective for the public purpose designed, has generally been assumed or conceded without question. But in a number of well-considered cases it has been distinctly held that, where a valid statute complete in itself enacts the general outlines of a governmental scheme, or policy, or purpose, and confers upon officials charged with the duty of assisting in administering the law, authority to make, within designated limitations and subject to judicial review, rules and regulations, or to ascertain facts, upon which the statute by its own terms operates in carrying out the legislative purpose, such authority is not an unconstitutional delegation of legislative power. See Railroad Com'rs v. Pensacola & A. R. Co., 24 Fla. 417, text 474, 5 South. Rep. 129, 12 Am. St. Rep. 220, 2 L. R. A. 504; Storrs v. Pensacola & A. R. Co., 29 Fla. 617, 11 South. Rep. 226; State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. Rep. 782; Chicago & N. W. Ry. Co. v. Dey, 35 Fed. Rep. 866; Georgia R. R. v. Smith, 70 Ga. 694, 128 U. S. 174, 9 Sup. Ct. Rep. 47; Tilley v. Savannah, F. & W. R. Co., 4 Woods 427, 5 Fed. Rep. 641; Stone v. Farmers L. & T. Co., 116 U. S. 307, 6 Sup. Ct. Rep. 334, 338, 1191; Reagan v. Farmers L. & T. Co., 154 U. S. 362, 14 Sup. Ct. Rep. 1047; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. Rep. 367; Atlantic Coast Line R. R. Co. v. N. Car. Corp. Com'n., 206 U. S. 1, 27 Sup. Ct. Rep. 585, and cases cited. See also Morgan's L. & T. R. & S. S. Co. v. Railroad Commission of Louisiana, 109 La. 247, 33 South. 214; State ex rel. Taylor v. Missouri Pac. Ry. Co., 76 Kan. 467, 92 Pac. Rep. 606; Minneapolis, St. Paul & St. P. & S. St. M. Ry. Co. v. Railroad Commissioners, Wis. , 116 N. W. Rep. 905; St. Louis, I. M., & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. Rep. 616; Atlantic Exp. Co. v.

Wilmington & W. R. Co., 111 N. C. 463, 16 S. E. Rep. 393, 55 Am. & Eng. Ry. Cas. 498; Chicago, B. & Q. R. Co. v. Jones, 149 Ill. 361, 37 N. E. Rep. 247, 24 L. R. A. 141; Southern Ry. Co. v. Hunt,    Ind.    , 83 N. E. Rep. 721; State *ex rel.* Minneapolis, St. P. & S. S. M. Ry. Co. v. Railroad Commission,    Wis.    , 117 N. W. Rep. 846.

If the regulation or action of an official or board authorized by statute does not in effect determine what the law shall be, or does not involve the exercise of primary and independent discretion, but only determines within defined limits, and subject to review, some fact upon which the law by its own terms operates, such regulation or action is administrative, and not legislative, executive or judicial in its nature and effect. The effect and operation of a statute may be made conditional or contingent upon the ascertainment of particular facts, and may be made to depend upon a subsequent event. This principle has been applied in regulations relating to public service, occupations, schools, health, elections, safety, food, game, liquor, taxation and other public purposes. See Town of Ormond v. Shaw, 50 Fla. 445, 39 South. Rep. 108; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, text 370, 39 South. Rep. 929; Storrs v. Pensacola & A. R. Co., 29 Fla. 617, 11 South. Rep. 226; Railroad Commissioners v. Pensacola & A. R. Co., 24 Fla. 417, text 471, 5 South. Rep. 129, 12 Am. St. Rep. 220, 2 L. R. A. 504; *Ex parte* Wells, 21 Fla. 280, text 323; City of Jacksonville v. L'Engle, 20 Fla. 344, text 351; State *ex rel.* Drew v. Board of State Canvassers, 16 Fla. 17; Cooley's Con. Lim. (7th ed.) 164; State v. Briggs, 45 Oregon 366, 77 Pac. Rep. 750, 78 Pac. Rep. 361; 2 Am. & Eng. Anno. Cas. 424 and note; State *ex rel.* Milhoof v. Board of Education of Village of Barberton, 76 Ohio St. 297, 8ı N. E. Rep. 568, 10 Am. & Eng. Anno. Cas. 879;

State *ex rel.* Beek v. Wagener, 77 Minn. 483, 80 N. W. Rep. 633, 778, 1134; Thompson In Re, 36 Wash. 377, 78 Pac. Rep. 899; City of Spokane v. Camp,      Wash.      , 97 Pac. Rep. 770; Brady v. Mattern, 125 Iowa 158, 100 N. W. Rep. 358; Pierce v. Doolittle, 130 Iowa 333, 106 N. W. Rep. 751; Commonwealth v. Kingsbury, 199 Mass. 542, 85 N. E. Rep. 848; State *ex rel.* Port Royal Min. Co. v. Hagood, 30 S. C. 519, 9 S. E. Rep. 686; Cincinnati, W. & Z. R. R. Co. v. Commissioners of Clinton Co., 1 Ohio St. 77; People *ex rel.* Akin v. Kipley, 171 Ill. 44, 49 N. E. Rep. 229, 41 L. R. A. 775; United States v. Ormsbee, 74 Fed. Rep. 207; In re Kollock, 165 U. S. 526, 17 Sup. Ct. Rep. 444; Locke's Appeal, 72 Pa. St. 491; Lothrop v. Steadman, 42 Conn. 583; Guild v. City of Chicago, 82 Ill. 472; State v. Thompson, 160 Mo. 333, 60 S. W. Rep. 1077, 54 L. R. A. 950; City of St. Louis v. Leissing, 190 Mo. 464, 89 S. W. Rep. 611, 4 Am. & Eng. Ann. Cas. 112; St. Louis, I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. Rep. 616; Bradley v. Board of State Canvassers,      Mich.      , 117 N. W. Rep. 649; 21 Harvard Law Review, p. 205 (Jan. 1908); Dastervignes v. U. S. 122 Fed. Rep. 30, 58 C. C. A. 346; Coleman v. Newby, 7 Kan. 82; Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. Rep. 349; Field v. Clark, 143 U. S. 649, 12 Sup. Ct. Rep. 495; Ex parte Whitley, 144 Cal. 167, 77 Pac. Rep. 879, 1 Am. & Eng. Ann. Cas. 13; 8 Cyc. 830, 834 and authorities cited in notes; State  *ex rel.* McCleary v. Adcock, 206 Mo. 550, 105 S. W. Rep. 270, 121 Am. St. Rep. 681; 6 Am. & Eng. Ency. Law (2nd ed.) 1021, 1029; Cincinnati, W. & Z. R. R. Co. v. Commissioners of Clinton Co., 1 Ohio St. 77, text 88; Moers v. City of Reading, 21 Pa. St. 188, text 202; State v. Brown, 19 Fla. 563; State v. Holmes, 53 Fla. 226, 44 South.

Rep. 179; Isenhour v. State, 157 Ind. 517, 62 N. E. Rep. 40, 87 Am. St. Rep. 228.

The statute in this case does not deny the carrier equal protection of the laws by imposing unusual limitations and penalties as in *Ex parte* Edward T. Young, 209 U. S. 123, 28 Sup. Ct. Rep. 441; Central of Georgia Ry. Co. v. Railroad Commissioners of Alabama, 161 Fed. Rep. 925; Bonnett v. Vallier,    Wis.    , 116 N. W. Rep. 885. Nor does it delegate the power to select the subjects upon which it operates as in Merchants Exchange of St. Louis v. Knott, 212 Mo. 616, 111 S W. Rep. 565; United States v. Blasingame, 116 Fed. Rep. 654; nor confer unlimited discretion as in State v. Great Northern Ry. Co., 100 Minn. 445, 111 N. W. Rep. 289, 10 L. R. A. (N. S.) 250; Dowling v. Lancashire Ins. Co., 92 Wis. 63, 65 N. W. Rep. 738, 31 L. R. A. 112; United States v. Bailey, 9 Pet. (U. S.) 238; O'Neil v. American Fire Ins. Co., 166 Pa. St. 72, 30 Atl. Rep. 943; Goldtree v. Spreckels, 135 Cal. 666, 67 Pac. Rep. 1091; State *ex rel.* Rusk v. Budge, 14 N. Dak. 532, 105 N. W. Rep. 724; Fite v. State *ex rel.* Snider, 114 Tenn. 646, 88 S. W. Rep. 941; nor authorize the commission to change existing law or to determine what the law shall be, as in Central of Georgia Ry. Co. v. Railroad Commission of Alabama, 161 Fed. Rep. 925, text 986; Mitchell v. State, 134 Ala. 392, 32 South. Rep. 687; Gilhooly v. City of Elizabeth, 66 N. J. L. 484, 49 Atl. Rep. 1106; nor authorize the commission to prescribe penalties as in Board of Harbor Commissioners of the Port of Eureka v. Excelsior Redwood Co., 88 Cal. 491, 26 Pac. Rep. 375, 22 Am. St. Rep. 321. See also discussion in State *ex rel.* Young v. Brill, 100 Minn. 499, 111 N. W. Rep. 639, 10 Am. & Eng. Ann. Cas. 425; Caha v. United States, 152 U. S. 211, 14 Sup. Ct. Rep.

513; South. Carolina v. Georgia, 93 U. S. 4, text 13.

Demurrage Rule 8 is not an attempt to prescribe an offense or impose a penalty not authorized by law as in United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. Rep. 764; United States v. Matthews, 146 Fed. Rep. 306; State *ex rel.* Adams v. Burdge, 95 Wis. 390, 70 N. W. Rep. 347, 60 Am. St. Rep. 123, 37 L. R. A. 157; nor an attempt to change rules of law as in Jones v. Southern Ry Co.,      , S. C.      , 56 S. E. Rep. 666; Tomlinson v. Armour & Co., 74 N. J. L. 274, 65 Atl. Rep. 883; nor unwarranted and unreasonable as in Van Lear v. Eisele, 126 Fed. Rep. 823; nor is it an arbitrary regulation of matters exclusively legislative as in Ex parte Theisen, 30 Fla. 529, 11 South. Rep. 901, 32 Am. St. 36.

Within the limitations of the State constitution the authority of the legislature is supreme in the regulation of intrastate transportation by common carriers unless the regulation in effect deprives a person or corporation of property without due process of law, or denies the equal protection of the laws, or directly and materially burdens interstate commerce in violation of the constitution of the United States or violates some other provision of the Federal constitution or laws. Pensacola & A. R. Co. v. State, 25 Fla. 310, text 323, 5 South. Rep. 833, text 839, 3 L. R. A. 661, text 666; Georgia Railroad & Banking Co. v. Smith, 128 U. S. 174, text 179, 9 Sup. Ct. Rep. 47; Ratcliff v. Wichita U. S. Co. 74 Kan. 1, 86 P. 150; 10 A. & E. Anno. Cas. 1017.

The constitution of the State declares that "the legislature is invested with full powers to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and

property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures." Section 30, Article XVI.

The statute provides for the election of three railroad commissioners, makes the provisions of the act apply generally to intrastate transportation by common carriers, and enacts that "said commissioners shall make reasonable and just rates of freight and passenger tariffs to be observed by all railroads, railroad companies, and common carriers doing business in this State over their respective lines or connecting lines; shall make reasonable and just regulations for the observance of the same as to charges at any and all points for the necessary handling and delivery of all kinds of freight and transportation of passengers, and for the prevention of any unjust discrimination in connection therewith; shall make reasonable and just rates of charges for the use and transportation of all kinds of railroad cars, conveying all kinds of freight to and from any and all points in this State; shall have the power * * * to regulate the charges for storage, wharfage and demurrage under such just and reasonable conditions as said commissioners may prescribe * * * and to direct and control all other matters pertaining to railroads that shall be for the good of the public." "Said commissioners shall have full power and authority to require any railroad, railroad company or common carrier to properly operate its railroad or transportation line and to furnish all the necessary facilities for the convenience and prompt handling, transportation and delivery of all freights offered along its line for transportation, and shall provide and prescribe all such rules and regulations as may be necessary to secure such operation and the furnishing of such facilities and prompt handling, transportation and delivery of all freights offered." "And said commissioners are

hereby given and granted full authority to do and per-
form any act or thing necessary to be done to effectually
carry out and enforce the provisions and objects of this
chapter." "If any railroad, railroad company or other
common carrier doing business in this State shall by any
officer, agent or employe be guilty of a violation or dis-
regard of any rate, schedule, rule or regulation provided
or prescribed by said commission, or shall fail to make
any report required to be made under the provisions of
this chapter, or shall otherwise violate any provisions of
this chapter, such company or common carrier shall
thereby incur a penalty for each such offense of not more
than five thousand dollars, to be fixed and imposed by
said commissioners," after notice, hearing, etc. Sections
2882, 2890, 2893, 2896, 2898, 2908, Chapter 5, General
Statutes of Florida of 1906.

Demurrage Rule 8 prescribed by the Railroad Com-
missioners is as follows: "Cars detained or held for want
of proper shipping instructions or by reason of improper
or excessive loading (where loading is done by shipper)
shall be subject to a demurrage charge of one dollar
($1.00) per car for each day or fraction of a day said
car or cars are so detained or held. Likewise, when cars
are promptly loaded and shipping instructions given, the
railroad agent must immediately issue the bills of lading
therefor; and if said car or cars are detained or held and
not carried forward within forty-eight (48) hours, ex-
cept perishable articles which shall be moved within
twenty-four (24) hours thereafter, said railroad com-
pany shall be liable to said shipper for the payment of
one ($1.00) dollar per car for each day or fraction of
a day that said car or cars are thus detained or held."

The constitutional provision above quoted and the laws
passed under it are intended for practical purposes, are

remedial in their nature, and are designed to secure to the public from common carriers and others engaged in rendering services of a public nature, a safe, prompt and efficient service adequate to meet all the reasonable requirements of the public in the service undertaken, and to require the proper rendering of the service for only a reasonable compensation and without unjust discrimination of any character.   See State *ex rel.* Ellis v Atlantic Coast Line R. Co., 53 Fla. 650, 44 South. Rep. 213, 13 L. R. A. (N. S.) 320.   The accomplishment of this useful purpose is a governmental duty essential to the welfare of the public; and laws passed to effectuate the purpose should be construed and applied so as to carry out the legislative intent as shown in valid acts.   In construing legislative enactments, whether penal or remedial, the valid intention of the lawmakers, as gathered from the language and purpose of the acts, is the guiding star; and every portion of an act should be given its proper effect.   Johnson v. Southern Pac. Co., 196 U. S. 1, 25 Sup. Ct. Rep. 158; Rogers v. Peck, 199 U. S. 425, 26 Sup. Ct. Rep. 87; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; Jacksonville Electric Co. v. Bowden, 54 Fla. 461, text 465, 45 South. Rep. 755.

Whether the statute or the rule violates the organic provisions separating the powers of government into departments, should be determined by reference to the constitution of the State.   The Federal constitution does not control the mere assignment of governmental power by the State, at least when all the powers of one department are not conferred upon those exercising the powers of another department of the government, or the powers conferred do not in effect impair rights that are secured by the Federal constitution. See Dreyer v. Illinois, 187, U. S. 71, text 84, 23 Sup. Ct. Rep. 28; Winchester &

S. R. Co. v. Commonwealth, 106 Va. 266, 55 S. E. Rep. 692.

The constitution provides that "The powers of the government of the State of Florida shall be divided into three departments—legislative, executive and judicial; and no person properly belonging to one of the departments shall exercise any powers appertaining to either of the others, except in cases expressly provided for by this constitution." Article II. "The legislative authority of this State shall be vested in a senate and house of representatives." Sec. 1, Art. III. "The supreme executive power of the State shall be vested in a chief magistrate, who shall be styled the Governor of Florida." Sec. 1, Art. IV. "The judicial power of the State shall be vested in a Supreme Court, Circuit Courts, Criminal Courts, County Courts, County Judges and Justices of the Peace." Section 1, Art. V. No courts other than herein specified shall be established in this State, except that the legislature may clothe any railroad commission with judicial powers in all matters connected with the functions of their office." Sec. 35, Art. V, as amended. See Laws of Florida 1897, page 308, General Statutes of 1906, pages 40-41. "The said railroad commissioners are hereby vested with judicial powers to do or enforce or perform any function, duty or power conferred upon them by this Chapter to the exercise of which judicial power is necessary." Section 2922 General Statutes.

The meaning and effect of these provisions are that, except as otherwise expressly provided in the constitution, all the purely legislative power of the State shall be exercised exclusively by the senate and house of representatives; that all the purely executive power of the State shall be exercised exclusively by the Governor; and

that all the purely judicial power of the State shall be exercised exclusively by the tribunals specified.

The governmental powers that are divided into the legislative, executive and judicial departments, and the exercise of which is forbidden to persons not properly belonging to the particular department, are those so defined by the constitution, or such as are inherent or so recognized by immemorial governmental usage, and which involve the exercise of primary and independent will, discretion and judgment, subject not to the control of another department but only to the limitations imposed by the State and Federal constitutions. The powers of all the departments are exercised by their proper officials through or by the aid of administrative officers. The constitution provides for and authorizes the legislature to provide for administrative officers who lawfully perform functions and duties and exercise more or less authority under the direction of officers who have real governmental powers, and who may properly belong to different departments of the government. This clearly indicates that all official duties, authority and functions prescribed or contemplated by law are not necessarily governmental powers within the meaning of the constitutional provisions separating the powers of government into departments. The purpose of the constitution is to secure efficient government by the harmonious cooperation of the separate independent departments.

The exercise of powers that appertain exclusively to the legislature, the Governor and the courts, is not subject to limitations or to review except as provided by the organic law. As the authority given the commissioners is subject to the limitations imposed by the legislature, and as the exercise of the authority is reviewable by the

courts, the authority cannot be really a governmental power that appertains exclusively to the legislativ : department. Such authority may, therefore, be regarded as merely administrative.

State and county officers carry out the legislative will, assist the executive in executing the laws, and aid the courts in making their proceedings and judgments effective. The functions performed by such officers are administrative, and are not the governmental powers separated into departments by the constitution. The exercise of some authority, discretion or judgment may be incident or necessary to the performance of administrative or ministerial duties; but such authority, discretion or judgment is subject to judicial review, and is not among the powers of government that the constitution separates into departments.

The provisions of the constitution relate to the division and the exercise of the legislative, executive and judicial powers of government, and not to the declaration of such powers. The mandate is in effect that, except as expressly provided for in the constitution, the legislative or law making power that is vested in the senate and house of representatives as the legislature shall not be exercised by the Governor or by the courts, the executive power conferred upon the Governor as chief magistrate shall not be exercised by the legislature or by the courts, and the judicial power that is vested in the courts shall not be exercised by the legislature or by the Governor. The constitution does not forbid the performance of administrative duties by the Governor, the courts or the legislature. Administrative duties are required to be performed in order to give full operation to and to make effective the respective powers of all the departments of government. An administrative officer may properly as-

sist all the departments in making the exercise of the powers appertaining to each department complete in operation and effective in enforcement, if the constitutional provision is not violated which forbids one person to hold or perform the functions of more than one office under the government of the State at the same time, and no other provision of the organic law is violated.

By implication the powers of government conferred by the constitution severally and exclusively upon the Governor, the courts and the legislature may not be delegated; but an implied exception as to municipal governments based on immemorial usage or public necessity has been conceded anterior to the constitutional provision that "the legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers and to alter or amend the same at any time." There may be other exceptions. See 7 Am. & Eng. Ann. Cas. 743.

The legislative, executive and judicial powers of the government are coordinate, each is independent of the others, and each is limited only by the provisions and principles of the State and Federal constitutions. In the exercise of the powers of government assigned to them severally, the legislature, the executive and the judiciary operate harmoniously but independently each of the others, and the action of any one of them in the lawful exercise of its own powers is not subject to control by either of the others.

Under our dual system of Federal and State government the inherent sovereign power to regulate intrastate transportation by common carriers is reserved to the State. The constitution of the State was adopted for the purpose of securing the powers of sovereignty and the rights of individuals; and it should be so construed and

applied as to accomplish this result. Every portion of the instrument should be given its proper effect for the public welfare. In construing, interpreting and applying the constitution of the State, the guiding star should be to effectuate its primary purpose, *viz*: the welfare of the people in the preservation and exercise of the rights of sovereignty and of individuals. The division of governmental powers into legislative, executive and judicial, is abstract and general, and is intended for practical purposes. There has been no complete and definite designation by a paramount authority of all the particular powers that appertain to each of the several departments. Perhaps there can be no absolute and complete separation of all the powers of a practical government. In order to justify the courts in declaring invalid as a delegation of legislative power a statute conferring particular duties or authority upon administrative officers it must clearly appear beyond a reasonable doubt that the duty or authority so conferred *is a power* that appertains *exclusively* to the legislative department, and the conferring of it is not warranted under the provisions of the constitution.

A clear violation of the constitutional provisions dividing the powers of government into departments should be checked and remedied; but where a reasonable doubt exists as to the constitutionality of a statute conferring power, authority and duties upon officers, the legislative will should be enforced by the courts to secure orderly government and in deference to the legislature whose action is presumed to be within its powers, and whose law-making discretion within its powers is not reviewable by the courts. See State *ex rel.* v. Bryan, *supra.*

Where a duly enacted statute confers upon officials authority that is not in its nature exclusively and purely a legislative, executive or judicial power, and it can fairly

be done to accomplish a valid legislative purpose, such authority may be construed as an administrative duty rather than as a governmental power.

The constitution expressly accords to the legislature full power to pass laws to correct abuses and to prevent unjust discrimination and excessive charges by common carriers and others engaged in rendering intrastate service of a public nature; and also requires the legislature to provide for enforcing such laws by adequate penalties or forfeitures. The power of the legislature is not confined to making rules and regulations for intrastate transportation. To give effect to the governmental power to regulate common carriers the legislature necessarily has the power to do or cause to be done everything in any manner and by any means requisite to the complete and effectual exercise of the power thus possessed that is not an undoubted violation of some other provision of the constitution.

The constitution should be interpreted so as not to render impotent or inoperative, but to preserve and make effective, the sovereign power of the State to regulate intrastate transportation by common carriers; and the specific provision of the constitution that the legislature has full power to pass laws to correct abuses, and to prevent unjust discriminations and excessive charges by common carriers and others engaged in rendering service of a public nature, should be so applied as to accomplish the purposes expressed therein.

The legislature may not delegate the power to enact a law, or to declare what the law shall be, or to exercise an unrestricted discretion in applying a law; but it may enact a law complete in itself designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to pro-

vide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. This principle of law is peculiarly applicable in the regulation of common carriers. The complex and ever changing conditions that attend or affect the performance of the useful public service rendered by common carriers, make it impracticable for the legislature to prescribe all the necessary rules and regulations. If the details of the general legislative purpose, within definite limitations as expressed in a complete law, cannot be committed to administrative officers, the sovereign power and duty to regulate would be impotent, to the great detriment of the public welfare. A denial to the legislature of the power to assign administrative duties within stated general limitations was not intended by the adoption of the constitution; and such a denial would not accord with the letter or the spirit of the organic law. A statute may be complete when the subject, the manner and the extent of its operation are stated in it.

Authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations, is not an exclusively legislative power. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all the departments. See Co. Com. Escambia Co. v. Board Pilot Com., 52 Fla. 197, 42 South. R. 697.

The making by the commissioners of just and reasonable administrative rules and regulations for intrastate transportation by common carriers is not a determination of what the law shall be, but such rules and regulations ascertain the facts upon which the previously declared law operates in accomplishing a public purpose.

The principles of law fixing the reasonableness of rules and regulations had already been declared by the common law, the statutes and the decisions of the courts, and the authority of the commissioners is, in administering the law, to ascertain within definitely stated limits and subject to judicial review, the facts upon which the law operates within the bounds stated in the statute. See Coopersville Co-operative Creamery Co. v. Lemon, 163 Fed. Rep. 145.

The common law duties of common carriers are ascertained by the application of legal principles to particular facts. The statutes of the State do not confine all the duties of common carriers, but expressly authorize the railroad commissioners to make reasonable and just rules and regulations to carry into effect the legislative purpose to regulate intrastate transportation by common carriers. This authority necessarily includes the power to make all rules and regulations needful or expedient to accomplish the general statutory purpose. The authority of the commissioners is not confined to the restatement of defined common law or statutory duties, but it extends to the making of any just and reasonable rules or regulations appropriate to the subject of administration and regulation within the bounds already fixed by the law. Modern development of the service requires the application of old legal principles to new circumstances, hence rules defining duties that have not been previously ascertained, but are determined by existing legal principles, are necessary for effective regulation; and these rules may be formulated by administrative officers within defined limits as an incident to the effective operation and enforcement of existing valid laws.

Under the constitution the legislature may confer upon the railroad commission judicial powers, but not exclu-

sively or purely legislative powers. The power to prescribe penalties to be incurred for breaches of public duty appertains to the legislative department, to be exercised by the enactment of laws. It may not be proper for the legislature to delegate the power to make a law prescribing a penalty, but it is competent for the legislature to authorize the commission to prescribe duties upon which the law may operate in imposing a penalty and in effectuating the purpose designed in enacting the statute. Where the penalty is imposed by law, it may be incurred for the penal violation of a rule prescribed by the commissioners. The authority to make the rule must be given by the statute within definite limitations. The adoption of rules within stated limitations upon which the statute by definite terms operates is not the exercise of purely legislative power, but it is a means for carrying out, within the prescribed limits, the legislative purpose expressed in the statute.

The statute, pursuant to the constitution, outlined and defined the legislative purpose and prescribed the penalty to be incurred in carrying out the purpose. The authority given the commission to make rules and regulations is general in terms, but definite in its limitations, and in its nature is administrative rather than legislative. Rules and regulations made by the commission to carry out in detail the expressed design of the statute must be prescribed as provided in the law, must be reasonable and just, must be in accord with the statute authorizing them, must relate to intrastate transportation, and must not violate any provision or principle of law. The authority thus conferred should be held to be administrative rather than purely and exclusively legislative. Administrative authority may be exercised by a board or commission. The statute should be lawfully applied.

The authority to make rules and regulations is given, but no power is conferred or attempted to be conferred upon the commission to give the rules and regulations the force and effect of a law. Whatever force and effect the rule has is derived entirely from the statute. No authority is given to change the law in any way. Authority to make rules for the complete lawful operation of the statute is all that is given.

The statute does not attempt to give to the railroad commission power to prescribe a duty to be observed by a railroad company as a carrier, and also to provide a penalty as such for the breach of the duty. Such action, if taken, may be considered an attempt to authorize the commission to make substantive law, in violation of the constitution, since prescribing a penalty to be incurred is a legislative function. But the statute may give and does give the commissioners the authority, and makes it their duty, to prescribe reasonable and just rules and regulations stating the duties of railroad companies as common carriers, for the breach of which duties the carrier may incur a penalty prescribed by the statute for such breach. See Pierce v. Doolittle, 130 Iowa, 333, 106 N. W. Rep. 751, 6 L. R. A. (N. S.) 143. The statute requires that the rules and regulations shall be reasonable and just and that they shall relate to the duties of common carriers as to instrastate transportation. This is the prerequisite standard and it is fixed and definitely limited in the law itself. The prescribing of rules upon which the statute operates is not the making of substantive law. The commission has no absolute power or discretion, but its power is definitely fixed by the law. The statute is complete in itself and inflicts the penalty for the breach of rules and regulations prescribed by the commission. In prescribing the rules the commission

simply makes certain and definite, in advance of the violation, the particular acts, within designated limitations, upon which the statute previously enacted and complete in itself operates in carrying out its expressed general but definite purpose and design.

In recognition of the power and duty of the State, the constitution expressly accords to the legislature full power and discretion to pass all laws necessary to prevent abuses, unjust discriminations and excessive charges by common carriers and others engaged in rendering service of a public nature. To accomplish the purpose designed, the power thus conferred necessarily includes authority to do and provide for the doing of every needful act that is not clearly and plainly violative of some constitutional provision. Every doubt as to constitutionality should be resolved in favor of a legislative act designed to carry out the specific constitutional provision relative to common carriers where some other provision of the organic law is not plainly and clearly violated.

Taking these provisions and principles in connection with the salutary governmental purpose designed to be accomplished, and the duty of the court to sustain and enforce the legislative will as expressed, when it is not clearly unconstitutional, it cannot be said that beyond a reasonable doubt the authority given by the legislature to the railroad commission to make reasonable and just rules and regulations for intrastate transportation, for the violation of which rules and regulations a penalty prescribed by the statute may be incurred, is such a delegation of purely and exclusively legislative power, as distinguished from an administrative duty or function, as that the constitutional provisions separating the powers of government into departments and conferring the legislative power of the State upon the senate and house

of representatives has been clearly violated so as to render the act unconstitutional and nugatory. Railroad Commissioners v. Pensacola & A. R. Co., 24 Fla. 417, text 474, 5 South. Rep. 129.

Even, if the provisions of the statute for the disposition of the proceeds of fines or penalties recovered, and for the suspension or remission of fines or penalties, be in conflict with the constitution, such provisions may be eliminated without affecting the usefulness of the valid portions of the act for the purposes intended, and without causing results affecting the main purpose of the act in a manner contrary to the intention of the legislature; and it cannot be said the law makers would not have enacted the statute without the invalid and unnecessary portions. State v. Tampa Water Works Co., 56 Fla. , 47 South. Rep. ; Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747; State ex rel. Arpen v. Brown, 19 Fla. 563. The disposition of fines recovered is controlled by existing valid laws. See State ex rel. Atty. Gen'l v. Rose, Kan. , 97 Pac. Rep. 788. The constitution provides for the remission and disposition of fines, and affords a guaranty against the imposition of excessive fines.

In view of the organic provisions relating to common carriers and to conferring judicial powers upon the railroad commission, it can not be said that the constitutional right to a jury trial, is, beyond a reasonable doubt, violated by the imposition by the commission of a penalty or fine prescribed by law for the penal violation of rules provided for regulating a public service, when the fine or penalty prescribed by and incurred under the statute, and imposed by the commission, is, if not voluntarily paid, recoverable only by action at law in a jury trial, where any defense the carrier has may be interposed in the action to recover the penalty fixed and

imposed by the commission, including the amount and validity of the penalty, if it be excessive or illegal. See Blanchard v. Raines, 20 Fla. 467, text 479; Cooley's Const. Lim. (7th ed.) 591, and cases cited. The principles announced in Plimpton v. Town of Summerset, 33 Vt. 283, do not repel this conclusion.

The regulation of intrastate transportation by common carriers is the exercise of the inherent and reserved police power of the State. While the constitution expressly authorizes the regulation of common carrier corporations, it also expressly provides for the protection of property rights against unlawful invasion whether under the guise of governmental regulation of a public service or otherwise. The provision of the State constitution forbidding the deprivation or taking of property without due process of law and without compensation, extends to property held by corporations, as natural persons are the beneficial owners of the property, though it be held and used by a legal corporate entity. That which is forbidden to be directly done to persons cannot lawfully be done by indirection through an agency or instrumentality, even though such medium be an entity authorized by law. An arbitrary and unreasonable regulation is not within the authority of the commission. If the action of the State through the commission is not a legally authorized regulation of a public service, or if the authorized regulation is arbitrary and unreasonable, and in effect deprives the beneficial owners of property used in rendering the public service of their property rights in a manner or to an extent not contemplated by law as a limitation upon the rights of those devoting their property to a public use, such action, though under the form of regulation, is in law a deprivation of property without due process of law in violation of the State constitu-

tion.    No actual compensation for the burden of just regulation of common carriers is required as in cases of the appropriation of property under the power of eminent domain.    Private property cannot lawfully be devoted to a public use or service against the will of the owner without due process of law and just compensation to the owner for the property so taken.    But where private property is by the act or consent of the owner used in rendering the public service required of a common carrier, such property is under the law thereby subjected by its owner to the burden of just and reasonable governmental regulation, in return for the privileges accorded to the carrier by the State, and in the interest of the public welfare.    The burden of reasonable governmental regulation being voluntarily assumed, it is not a taking or deprivation of property requiring compensation.    The assumption of the public service imposes upon the carrier the burden of proper governmental supervision and also the limitation that an adequate service shall be rendered   without unjust discrimination and for only a reasonable compensation; therefore the result of such burden and limitation does not deprive the carrier of property without compensation or without due process of law.    Common carriers engaged in rendering intrastate service in this State do so subject to the constitutional and statutory provisions regulating such service, including all the remedies provided for enforcing the proper performance of the public duties that are or may be lawfully imposed upon the carrier.    See State *ex rel.* Attorney General v. Atlantic Coast Line Ry., 52 Fla. 646, 41 South. Rep. 705, 12 L. R. A. (N. S.) 506.

If the rule is authorized by law and is reasonable, it does not deprive the carrier of property without due process of law.

While in the abstract the power to prescribe rules and regulations for common carriers appertains to the legislative department, it is settled that within proper limits such power may be exercised through administrative officers and boards, and that in general such officers and boards have authority to do anything proper and necessary for the complete lawful exercise of the duties imposed upon them.

Wherever a power is given by statute everything lawful and necessary to the effectual execution of the power is given by implication of law.   Mitchell v. Maxwell, 2 Fla. 594; In re Pearson, 8 Fla. 496, text 508; State *ex rel.* Attorney General v. Gleason, 12 Fla. 190, text 209; *Ex parte* J. C. H., 17 Fla. 362; *Ex parte* Wells, 21 Fla. 280; State *ex rel.* Smith v. Burbridge, 24 Fla. 112, text 126, 3 South. Rep. 869; See also Markey v. State, 47 Fla. 38, text 50, 37 South. Rep. 53, text 56.

The railroad commissioners are statutory officers whose powers are special and limited.   They can exercise only such authority as is legally conferred by express provisions of law or such as is by fair implication and intendment incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the purposes for which the offices were established.   See State *ex rel.* Ellis v. Atlantic Coast Line Ry., 51 Fla. 578, 41 South. Rep. 705.   Authority that is indispensable to the undoubted valid purposes and objects of remedial statutory provisions, may be inferred or implied from powers expressly given.   The difficulty of making specific enumeration of all such powers as the legislature may intend to confer upon railroad commissioners for the regulation of common carriers in the interest of the public welfare, renders it necessary to confer some power in general terms; and general powers

given are intended to confer other powers than those specially enumerated. If there is a reasonable doubt as to the lawful existence of a particular power that is being exercised by the commissioners, the further exercise of the power should be arrested; but where power is clearly conferred or fairly implied, and is consistent with the purposes for which the commissioners were established by law, the existence of the power should be resolved in favor of the commissioners so as to enable them to perform their proper functions of government. When action is taken by the commissioners in the exercise of undoubted authority, their administrative discretion will not be controlled by the courts and will not be interfered with where there is no abuse of power or discretion shown. All doubts as to the propriety of means or methods used in the exercise of a power clearly conferred should be resolved in favor of the action of the commissioners in the interest of the administration of the law. Where not expressly or impliedly restrained by law, the commissioners may exercise a wide administrative discretion in the use of the authority lawfully conferred upon them for governmental purposes, the usual limitations being good faith and reasonableness, not wisdom or perfection.

The constitution and the statute contemplate the regulation of such new duties and obligations as may arise in the development of the service and in the increased and varying but reasonable demands of progress in the interests of the public welfare. See State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225.

Constitutions and statutes can at best only provide in general and comprehensive terms for the exigencies of the future, leaving the development and application of

the general principles by administrative officers to new conditions as they arise in the course of human progress.

The purpose of the constitution and of the railroad commission law enacted thereunder is by practical and lawful means to correct and prevent abuses by those engaged in rendering service of a public nature, and to secure to the public, collectively and individually, prompt and adequate service for only a reasonable compensation and without unjust discrimination of any character as to persons, localities, commodities, conditions or otherwise.

A failure to promptly transport cars loaded for shipment may be an abuse or an unjust discrimination in rendering the public service. The power is given the commissioners to make just and reasonable rates, rules and regulations for the transportation of intrastate freight, and to require the carrier to properly operate its road and to furnish all necessary facilities for the convenient and prompt handling, transportation and delivery of all freights offered, to provide and prescribe all such rules and regulations as to charges at all points and as may be necessary to secure proper operation and facilities and the prompt transportation of freight, to do everything necessary for the public good, and to carry out and enforce the objects of the law. This clearly gives the commissioners authority to prescribe charges, rates, rules and regulations to facilitate the intrastate transportation of freight. This authority is not qualified or limited by the power to regulate demurrage charges expressly given by the statute.

The rules and regulations the commissioners are authorized to adopt may cover any and all duties of the carrier as to intrastate transportation, whether the duties were known to the common law or not. Such rules and

regulations are by the statute made *prima facie* reasonable and just, and they must in fact be just and reasonable and within the authority conferred, and must not directly and materially burden interstate commerce or violate any provision or principle of law.

The rules and regulations must operate within the expressed limitations of the statute, and their reasonableness must be subject to judicial determination as other similar matters are determined, without undue restrictions or discriminations. To ascertain the reasonableness of a rule in its operation as a burden to the carrier, the just requirements of the public service, the classification and the extent and relation of the subject regulated and the effect of the burden on the entire business of the carrier should be considered. Corporation Commission v. Atlantic Coast Line R. Co., 137 N. C. 1, 49 S. E. Rep. 191; Atlantic Coast Line R. Co. v. Florida *ex rel.* Ellis, 203 U. S. 256, 27 Sup. Ct. 108; Atlantic Coast Line R. Co. v. North Carolina Corporation Commission, 206 U. S. 1, 27 Sup. Ct. Rep. 585.

In determining whether the adoption and enforcement of Demurrage Rule 8 is a valid exercise of a power lawfully conferred upon the railroad commissioners, the existence of the power cannot be presumed, but must appear in the laws of the State. If the power exists, the correctness of the action of the commissioners in making and enforcing the rule may be presumed until the contrary is made to appear. If it can fairly be done, the rule should be so construed and applied as to make it conform to the powers conferred upon the commissioners, rather than as being an assumption of power not conferred. Even if the rule was adopted with reference to the provision of the statute specially authorizing the commissioners to regulate the charges for demurrage,

and if the rule cannot be sustained under that provision of the statute, yet if the adoption of the rule is a valid exercise of authority given by other provisions of the statute, the rule should not be annulled. It is clear the rule does not violate any positive provision for regulating the charges for demurrage.

As the commission has authority to prescribe rates, charges, rules and regulations for intrastate transportation, and has no power to prescribe penalties as such, the provisions of Demurrage Rule 8 should be so construed as to conform to the powers of the commission, if it can be fairly done.

The charge allowed a carrier for cars unduly delayed by a shipper is technically called demurrage, is remedial in its nature, and is clearly not a penalty. So likewise the reciprocal charge allowed a shipper for freight unduly delayed on loaded cars by the carrier is in its nature remedial and is not a penalty. The right of the shipper to have his goods promptly transported by a common carrier is a valuable right. See New Mexico ex rel. McLean v. Denver & Rio Grande Railroad Company, 203 U. S. 38,      Sup. Ct. Rep.      ; Moore on Carriers, 246. The shipper has as much right to relief from a delay in transporting his freight when it is properly offered as the carrier has to relief from a delay of a car unduly held for loading. There may be no injury or depreciation in the value of the car or the freight by a delay, but the right to promptness and convenience exists and may be enforced, and the public has an interest in the prompt movement of cars needed for other shipments. The purpose designed to be accomplished in allowing this reciprocal charge, or in imposing this reciprocal liability, is to afford the carrier and the shipper a limited cumulative remedy to prevent the delaying of

cars and of freight, and to incidentally serve the public welfare by stimulating and facilitating the transportation of freight. The statute expressly provides for cumulative remedies as being peculiarly appropriate to this public service, and specially authorizes the commission to do everything proper and necessary to facilitate intrastate transportation.

A statute may provide for remedial redress to an individual injured by the breach of a public duty, in addition to the penalty imposed to punish for the injury to the public. In determining whether a statute is penal in the strict and primary sense, a test is whether the injury sought to be redressed affects the public. If the redress is remedial to an individual and the public is indirectly affected thereby, the statute is not regarded as solely and strictly penal in its nature. See Huntington v. Attrill, 146 U. S. 657, text 668, 13 Sup. Ct. Rep. 224, 36 L. Ed 1123; Bell v. Farwell, 176 Ill. 489, 52 N. E. Rep. 346, S. C. 68 Am. St. Rep. 194; Gardner v. New York, & N. E. R. Co., 17 R. I. 790, 24 Atl. Rep. 831.

The same principle should apply to rules and regulations made pursuant to a statute. The duty prescribed by Demurrage Rule 8 affects the public, and the moral effect of the liability imposed in favor of the shipper indirectly tends to the good of the public in facilitating transportation; but the enforcement of the liability is of no direct public concern. The injury to the shipper in detaining cars may indirectly affect the public, and a penalty may be incurred under the statute for detaining the cars, but the non-payment of the liability to the shipper for the detention does not affect the public. The liability imposed by the rule is a civil demand and is not a penalty; and a penalty can not lawfully be imposed for non-payment of the liability under the provisions of

the statute and rule as framed. The rule creates a liability that did not previously exist and the rights under it should not be extended beyond the plain terms of the rule. The rule, if it could do so, does not make the failure to discharge the liability an act or omission for which a penalty may be incurred.

Penal laws, strictly and properly, are those imposing a pecuniary or personal punishment for an offense against the State, and which are subject to the pardon power. Where statutes or valid rules give one person a private right against another, neither the liability imposed nor the remedy is in general strictly or properly penal. See Pennington v. Douglass A. & G. Ry. Co., 3 Ga. App. 665, 60 S. E. Rep. 485.

Demurrage Rule 8 provides a regulation to secure the prompt transportation of freight, and prescribes a small uniform rate or charge to be paid to a carrier by a shipper for unduly detaining cars, and to a shipper by a carrier for unduly detaining freight loaded in cars. This rate or charge is not a part of the compensation for the transportation of the freight, nor is it the sole compensation for loss in the value or use of the freight or for damage to the freight because of its detention.

It is a reasonable provision intended to aid in securing the carrier against the undue detention of cars needed for other shippers, whether the car is injured by the delay or not; and to afford the shipper some speedy and practicable relief against loss or inconvenience from undue delay of freight loaded in cars, whether the value of the freight is affected by the delay or not. The interests of the carrier, of the shipper and of the public require of a carrier prompt movement of cars loaded with freight, in order that the carrier may serve all properly offering. Yazoo & M. V. R. Co. v. Keystone Lumber Co., 90 Miss.

391, 43 South. Rep. 605. The usefulness of the rule for the purpose designed is for the commissioners to determine within their discretion, the power to make the rule being apparent. It is general in its application to all under like conditions.

If the one dollar a day per car liability or charge has the effect of reducing the transportation charges on freight delayed by the carrier, or of increasing the tariff if cars are delayed by the shipper, a useful purpose is served by the small liability or charge authorized as a regulation to stimulate transportation in the interest of the carrier, the shipper and the public; and the parties may avoid the liability or charge by observing the rule or by showing a valid excuse for not doing so. The damage caused by mere delay may not be easily or accurately ascertained and the amount fixed by the rule is apparently not excessive in any case. See Smith v. Newell, 37 Fla. 147, 20 South. Rep. 249.

This regulation of the transportation of freight loaded in cars is not an arbitrary or unjust discrimination against freight not so loaded, since it is a natural, practical, just and proper classification of subjects for regulation. The public as well as the carrier is interested in the movement of cars loaded for shipment, because the next shipper awaits the car. Shippers having freight awaiting cars, and the public, have more interest in the forwarding of loaded cars than the owner of the loaded freight and the public have in freight not loaded on cars needed for transportation. The rules properly make provisions for prompt movement of loaded cars and also of articles of freight. The regulation fixing a charge for unduly delaying cars or freight is a reasonable provision duly authorized in aid of proper service for the benefit of the carrier, of the shipper and of the public.

The amount allowed to the carrier from the shipper for delaying cars and to the shipper from the carrier for delaying freight, is a fixed uniform rate of charge prescribed as a speedy cumulative remedy for undue delays affecting the rights of the parties in a public service, and is not a penalty within the meaning of the statute. A penalty is incurred under the statute for violating in a penal sense the statute or a prescribed rule, and not for failure to discharge a money liability to a shipper imposed by the rule. The amount of the penalty, within a prescribed maximum, as stated in the statute, is to be fixed and imposed by the commissioners in each case after hearing, and to be recovered by action and devoted to public purposes.

The obligation to pay the liability or charge prescribed by Rule 8 may be adjusted in the payment of tariffs or enforced by the parties concerned by due course of law. The carrier may incur a penalty under the statute for failure to promptly move cars under the rule requiring the performance of the duty; but the refusal of the carrier to pay the charge allowed the shipper for delaying the shipment is not a penal violation of the rule, for which a penalty may be incurred under the statute. For a charge due the carrier for a breach of duty by the shipper in not properly loading or tendering the car, the carrier has its remedy by action and through the freight if it is on the car, and in removing the car if it is not loaded.

There is no contention that the charge provided by the rule is unreasonable in amount or that it does not in fact tend to benefit the parties and to facilitate transportation, as contemplated by the statute. The rule has no application to interstate commerce or transportation, and cannot

legally be so applied as to directly and materially burden interstate commerce.

The liability imposed by the rule is not a fine to be suspended or remitted by the Governor or pardon board. It is a cumulative remedy in the nature of a charge or recompense for the inconvenience or detriment resulting directly to the shipper for unduly detaining cars loaded with freight. The public has an interest because the tendency of the rule is to prevent and correct abuses and unjust discriminations and to afford prompt and adequate service to the public. While the imposition of the liability for the purpose of stimulating and facilitating transportation is of interest to the public, the non-payment of the liability does not affect the public and is not a penal violation of the rule. The public is not concerned in the payment of the liability or charge any more than it is in the payment of other claims or charges in particular cases. The failure or refusal to discharge the liability imposed by the rule is not a violation of law, as the failure to move loaded cars or the charging of excessive rates would be, and the failure or refusal to pay the amounts or charges or rates fixed by the rule is not made a penal violation of the rule. The liability that may be incurred serves to facilitate transportation. The enforcement of the liability is by adjustment or by action at law between the parties, and not by the imposition of a penalty by the commission, as for the violation of a public duty.

The liability or charge prescribed by Demurrage Rule 8 does not appear to be excessive or unreasonable or unjustly discriminatory; but it may be considered to be and may in fact be a reasonable and salutary means to prevent abuses, unjust discriminations and excessive charges in intrastate transportation, which is the very purpose

of the constitution and of the railroad commission law.

If a valid excuse exists for not observing the rule, there is no violation of it, and the rule cannot legally be so applied as to directly and materially burden interstate commerce, or so as to deprive the carrier or the shipper of any rights afforded by the law.

The right to regulate extends to every phase of the service and to every act of the carrier corporation that affects the service, either as to its promptness and adequacy and equality to all under like circumstances, or as to the compensation for the service.   Whatever affects the public is subject to reasonable regulation by governmental authority in the interest of the public. The limit of the regulation is the reasonable requirements of the public service undertaken or engaged in to meet the just demands of the public to be served.

As the commissioners had the power to make a reasonable and just regulation and charge to facilitate transportation, the particular method or character of the regulation and charge is within the discretion of the commissioners, and it does not appear that their discretion has been abused or that the regulation and charge and liability contained in Rule 8 are unreasonable or unjust. See Atlantic, S. R. & G. Ry. Co. v. State, 42 Fla. 358, 29 South. Rep. 319, 89 Am. St. Rep. 233.

If in regulating intrastate transportation any action of the commissioners in fact directly and unreasonably burdens interstate commerce, the carrier is not legally required to abide by it.   State action as to intrastate transportation that is reasonably designed and exerted for the public welfare and does not directly and materially burden interstate commerce, although it may incidentally affect interstate commerce, is not obnoxious

to the authority of Congress and will not be interfered with when properly taken and reasonably enforced.

Even if the statute and rule are made absolute in terms, the existence of a valid excuse for not observing them may be shown in defense by the carrier, when charged with a violation of the statute or rule. Exceptions to the rule as prescribed may be implied by law. When some exceptions are expressed others may be implied, if a contrary legislative intent does not appear, as was held in Houston & T. C. R. Co. v. Mayes, 201 U. S. 321, 26 Sup. Ct. Rep. 491. See Allen v. Texas & Pacific Ry Co. 100 Tex. 525, 101 S. W. Rep. 792.

It is peculiarly within the province of the State commission to regulate the movement of railroad cars within the State, and this authority is not in conflict with the interstate commerce regulations, at least where interstate commerce is not directly burdened.

The statute does not authorize a penalty to be imposed for failure to pay a penalty previously imposed, but only for the violation of the statute or a rule or regulation. The refusal to pay penalties is not a violation of the statute or of a rule or regulation. Penalties legally imposed may be recovered by action.

Even if it is competent for the legislature to impose a penalty upon a carrier alone for a refusal to pay a pecuniary liability, in the absence of valid, explicit enactments, a penalty may not be incurred for merely refusing to pay an amount for which only a liability is created by the rule, in the payment of which liability the public is not concerned.

The maximum penalty prescribed by the statute may not be excessive for extreme cases involving the duties of a common carrier, even if a small portion of the maximum penalty is proper in most cases. The constitution

affords a guaranty against excessive fines. Every act of the commissioners under the statute must be valid and reasonable, and is subject to review in appropriate proceedings.

The penalties are prescribed for acts and omissions of common carriers that tend to abuses, unjust discriminations or excessive charges in the performance of the intrastate public duty pursuant to the constitutional policy; and the rules and regulations for the violation of which a penalty may be incurred under the statute must be legally prescribed before the act, and must relate to those public duties, not to private claims and must be reasonable and not violative of any provision or principle of law. See Efland v. Southern Railway Company, 146 N. C. 135, 59 S. E. Rep. 355.

The carrier is a foreign corporation; but, being permitted to do business in the State, is entitled to the benefits and is subject to the burdens of applicable laws, State and Federal. As the carrier is permitted to engage in interstate transportation, the State cannot interfere with the interstate business; yet the intrastate business of the carrier is subject to valid State regulation. The validity of State regulation of intrastate transportation by the carrier is determined finally by State tribunals unless the Federal authority is transgressed. The policy of the law is to require of a carrier adequate service for a reasonable compensation and without unjust discrimination, and to conserve the rights of the carrier within the limitations imposed by law upon those engaged in a public service.

The provisions of the Fourteenth Amendment to the Constitution of the United States relating to due process of law and to the equal protection of the laws, are applicable to property of natural persons that is held by the corporation, not because the corporation is among the

persons contemplated by the amendment, but because the protection afforded to natural persons was intended to be complete, and as natural persons are the beneficial owners of the property held by the corporation, such property is secured by the amendment though it is held indirectly, through the corporation, and not directly by natural persons. Whatever the law forbids to be directly done is also forbidden to be indirectly done.

The word "person" in the clause of the Fourteenth amendment to the constitution, "No State shall * * * deprive any person of life, liberty or property without due process of law, nor deny to any person the equal protection of the laws," includes the natural persons who compose the corporation, and who are the beneficial owners of all the property, the technical and legal title to which is in the corporation. The fact that the corporators, who are natural persons, are united into a legal corporate entity, does not prevent them from having a right of property in the assets of the corporation which is entitled to the protection of this clause of the constitution. Nor does the intervention of this artificial being between the real beneficial owners and the State, for the simple purpose of convenient management of the business, enable the State, by acting directly upon the legal corporate entity, to deprive the real parties beneficially interested, of the protection of these important provisions. County of San Mateo v. Southern Pac. R. Co., 13 Fed. Rep. 722, tex 757. See, also Pembina Con. Silver Mining & Milling Co. v. Pennsylvania, 125 U. S. 181, text 189, 8 Sup. Ct. Rep. 737.

Courts may inquire into the validity of State regulation of intrastate transportation by common carriers if a prima facie case of invalidity is clearly made; and when justice demands it in cases reasonably free from doubt,

the regulation may, upon proper terms, be enjoined pending full determination; but the regulation should not be ultimately interfered with unless it is beyond all doubt in effect a direct and material burden upon interstate commerce, or is a flagrant attack upon rights secured by the State or Federal constitution. *Ex parte* Edward C. Young, 209 U. S. 123, 28 Sup. Ct. Rep. 441. See also San Diego Land & Town Co. v. City of National City, 174 U. S. 739, text 754, 19 Sup. Ct. Rep. 804; Ratcliff v. Wichita &c., 74 Kan. 1, 86 Pac. Rep. 150, 10 A. & E. Ann. Cas, & notes.

The fundamental property rights and obligations of those whose property is used in the business of a common carrier are the same whether the carrier is a natural person or a legal corporate entity. An unreasonable regulation, whether favorable to the carrier or to the patron, in effect takes private property without due process of law, and denies to the real owner of property injuriously affected, the equal protection of the laws. The owners of property lawfully used by a carrier in the public service cannot, under the guise of regulation, legally be deprived of the property or any portion of it, by the enforcement of unreasonably small compensation, or of unreasonable burdens by delays by the shipper of the means of transportation, or otherwise. Likewise a shipper, under the guise of regulation, cannot lawfully de deprived of property, or of the use of it, by requiring an unreasonably large compensation for the service rendered, or by permitting unreasonable delays of property by the carrier in transportation.

While the legislature may by proper enactment exercise any power that is legislative in its nature and is not forbidden expressly or impliedly by the State and Federal constitutions, and while the prescribing of penalties to be

incurred is a legislative function, yet a statute providing penalties should not make such an arbitrary or unreasonable classification of persons or subjects to which the penalties apply as to deny to any person or corporation the equal protection of the laws. Common carriers and their duties of a public nature are subject to just classification for legislative purposes; but mere monetary obligations and liabilities of common carriers may not be so different from others as to afford a just classification for legislative purposes; and unjust classifications may result in denying equal protection of the laws.

The statute provides for the collection by action at law of penalties lawfully imposed and does not contemplate the collection of a pecuniary liability by imposing penalties. Equal rights are afforded to all in the enforcement of debts by action at law.

Where a statute and a rule made thereunder are in accord with the terms and purpose of the State constitution, the ultimate test of their validity as affording due process of law and equal protection of the laws, as guaranteed by the Federal constitution, is the reasonableness of the statute and rule with reference to their effect upon property rights.

Legislation relating exclusively to the duties of common carriers to the public is based upon a practical, salutary and proper classification of subjects, and does not by reason of such classification deny to the carriers equal protection of the laws. See Seaboard Air Line Railway v. Seegers, 207 U. S. 73, 28 Sup. Ct. Rep. 28.

All property is held subject to existing provisions of law; and, in devoting its property to the rendering of the public service, the common carrier thereby voluntarily subjects it to the burden of lawful governmental regulation under the common law and under the State constitu-

tion. State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225. The regulation properly construed and applied is in accordance with the requirements of law, is reasonable and just, applies to all alike under similar circumstances and is based on a just classification, therefore the burden of it does not deprive the carrier of property without due process of law, nor deny to it the equal protection of the laws, even though the burden results in the payment of money by the carrier to the State or to an injured individual solely because of the failure of the carrier to perform some duty it owes under the law to the public or to a member thereof.

Valid regulation, though burdensome, is not destructive of constitutional rights, but burdens imposed by unreasonable or unlawful regulations are within the reach of the guaranties afforded by the constitution. See 8 Cyc. 1066 and authorities cited. See, also, Raleigh Iron Works v. Southern R'wy, N. C. , 62 S. E. Rep. 595.

Transportation for others as an independent business is commerce irrespective of the purpose of it. See Hanley v. Kansas City S. R. Co., 187 U. S. 617, 23 Sup. Ct. Rep. 214.

The fact that the railroad is also engaged in interstate transportation does not exempt it from State regulation as to its intrastate business. People *ex rel.* v. Chicago, I. & L. R. Co., 223 Ill. 581, 79 N. E. Rep. 144, 7 Am. & Eng. Ann. Cas. 1, and notes.

If it be true, as contended, that the commission cannot be given power to regulate the movement of loaded cars, because such regulation might in cases of emergency, as when cars are inadequate or not properly distributed, affect interstate commerce, such a result would eventually relieve the commission of much useful authority.

The rule is that State regulation of intrastate trans-

portation is not in conflict with the authority of Congress if such regulation only indirectly or incidentally affects, and does not in fact directly and materially burden, interstate commerce. Louisville & N. R. Co. v. Commonwealth of Kentucky, 183 U. S. 503, text 518, 22 Sup. Ct. Rep. 95. The statute is limited to intrastate transportation, as to which the State has full authority. It does not in any way regulate interstate commerce, and should be so administered as not to conflict with congressional authority and not to directly and materially burden interstate commerce. Atlantic Coast Line Ry. Co. v. Commonwealth, 102 Va. 599, 46 S. E. Rep. 911; Bagg v. Wilmington, C. & A. R. Co., 109 N. C. 279, 14 S. E. Rep. 79, 26 Am. St. Rep. 569, 14 L. R. A. 596; People *ex rel.* Chicago, I. & L. R. Co., 223 Ill. 581, 79 N. E. Rep. 144, 7 Am. & Eng. Ann. Cas. 1; State v. Chicago, M. & St. Ry. Co.,     Wis.    , 117 N. W. Rep. 686; Morris-Scarboro-Moffit Co. v. Southern Exp. Co., 146 N. C. 167, 59 S. E. Rep. 667.

Whatever may be the privilege of the State to aid interstate commerce in matters to which the authority of Congress has not been extended, the power of the railroad commissioners to make rules and regulations is by the statute expressly limited to intrastate transportation.

The Act of Congress according to the States special rights in regulating interstate traffic in liquors is not applicable here. See Wilson Act, 3 Federal Statutes Annotated 853; Delamater v. South Dakota, 205 U. S. 93, 27 Sup. Ct. Rep. 447, 10 Am. & Eng. Anno. Cas. 733, and notes; Heyman v. Southern Ry. Co., 203 U. S. 270, 27 Sup. Ct. Rep. 104, 7 Am. & Eng. Ann. Cases 1130.

If, in regulating intrastate transportation, interstate commerce is indirectly or incidentally affected thereby,

but no direct and material burden is thereby imposed on interstate commerce, the authority of Congress is not encroached upon, and the State regulation will be sustained, if otherwise proper. Currie v. Raleigh & A. Air Line R. Co., 135 N. C. 535, 47 S. E. Rep. 654.

The statute expressly requires notice to be given to all interested parties and an opportunity to be heard thereon before rules and regulations are adopted by the commissioners, and it must be presumed the statute was complied with in this regard.

Within its proper sphere the will of the law-making power of the State is supreme where no provision or principle of the State or Federal organic law is violated. In construing and applying a duly enacted statute the valid legislative intent is the guiding star. The design or intention of a statute is ascertained by a consideration of the language used, the subject-matter, the inducing circumstances and the limitations contained in the Federal and State constitutions.

Where a statute does not violate the Federal or State constitution the legislative will is supreme and its policy is not subject to review by the courts. The courts recognize and enforce the policy of the law as expressed in valid statutes, but they do not assume to regulate it. See Ratcliff v. Wichita Union Stock-Yards Company, 74 Kan. 1, 86 Pac. Rep. 150, 10 Am. & Eng. Ann Cas. 1016 and cases cited.

The language of a statute should be so construed as to make it accord with organic law when it can be fairly done. A constitutional enactment is presumed to be the intent of the legislature. When a statute does not plainly and beyond a reasonable doubt violate some provision or principle of the State or Federal constitution its full meaning and effect should be regarded as within the leg-.

islative intent. Where a portion of a statute is clearly unconstitutional, but such portion may be eliminated without impairing the effectiveness of the valid portion for the purposes designed, and without causing results affecting the chief object of the act in a way contrary to the intention of the legislature, it may be assumed, where the contrary does not clearly appear, that the valid portion of the statute expresses the controlling legislative intent. City of Tampa v. Salomonson, 35 Fla. 446, 17 South. Rep. 581. A statute or a portion of it may be repealed by implication but the intent to repeal must appear. Several statutes relating to the same general subject, though enacted at different times may be construed together, and each may stand where there is no repugnancy and no contrary intent appears. It is within the power of the legislature to pass laws for the regulation of intrastate transportation by common carriers, and to provide for enforcing such laws by adequate penalties or forfeiture; and valid statutes relating to this subject must be held to express the legislative intent.

The express particular power the statute gives the commission to regulate demurrage was not intended to limit and does not limit the general but definite power given the commission in the statute to make just and reasonable rates, charges, rules and regulations for intrastate transportation. Nor is the general power repugnant to, or inconsistent with or affected by the particular power given the commission to regulate demurrage, whether the particular power is or is not valid, practical or effective. The general power given by the statute is in accord with the expressed legislative purpose and within the purview of the constitutional provision.

The particular powers and duties prescribed in other acts were not intended to affect and do not affect the

powers and duties of the commission, as defined in the Railroad Commission statute and the amendments thereto. The constitution and the statutes contemplate cumulative remedies to make effective the general purpose of regulating intrastate transportation by common carriers. The multitudinous, complex and ever-changing conditions require varying and effective remedies to enforce the public duty and to protect the property and privilege rights of the carrier. The policy and purpose of the law contemplate a rigid and effective enforcement of the duties due the public, and the conservation of the rights of the carrier, within the limitations imposed by law upon those devoting their property and labor to a public service.

The enactment of laws relating to particular duties of common carriers, and to remedies for enforcing the duties, does not indicate a legislative intent to modify the general statutory provisions for regulation where there is no repugnancy. There is no apparent repugnancy between the railroad commission law and the particular statutes regulating certain duties of common carriers. The apparent legislative intent is to make regulation effective by providing cumulative remedies.

Demurrage Rule 8 being a valid, reasonable and just regulation of intrastate transportation, its adoption is within the power intended to be conferred upon the railroad commission. The public duty defined by the rule, if reasonable and just, may be enforced by the imposition of the penalty provided by the statute even if the refusal to pay the pecuniary liability imposed by the rule for its breach is not a penal violation or disregard of the rule. Although a refusal to pay the sums for which the rule makes the carrier liable to the shipper may not be such a violation or disregard of the rule as that a penalty may

be incurred therefor under the statute, and although the liability imposed by the rule, if valid, may be enforced only by action at law, the rule is not for such reasons necessarily beyond the legislative intent. It may contribute to making the intended regulation effective.

It must be assumed that the legislature intended the statute to operate constitutionally, and it should be so construed and applied as to be in accord with the organic law if it can be done. If the constitutional provision guaranteeing equal protection of the laws would be violated by the imposition upon the carrier alone of a penalty for a refusal to discharge the liability to a shipper as provided by the rule, there was presumably no legislative intent that the statutory penalty should be incurred for such refusal. The evident intent of the law makers was to provide a penalty to be incurred by the carrier alone for the breach of its duties in which the public has an interest, such as abuses of its peculiar privileges and powers by unlawfully failing or refusing to transport, by unjust discrimination, or by excessive charges, or otherwise. This is a just classification of subjects for purposes of legislation. But the public has no interest in the payment of a monetary liability imposed by the rule, and the liability of a carrier for money payments is not so different from that of a shipper or others, as that for a refusal to pay the liability a penalty may be incurred by the carrier alone without an apparent denial to the carrier of the equal protection of the laws. Such a classification of the subject of pecuniary liability for the purpose of imposing penalties is obviously not just or constitutional and therefore was presumably not within the legislative intent. The liability of the carrier is a charge imposed for the purpose of facilitating transportation, it apparently is not unreasonable on its face, and it may be discharged by

adjustment of freight charges or enforced by action at law, therefore it does not now appear that the rule is not within the power intended to be conferred upon the commission.

A statute should be so construed and applied as to be in accord with the provisions of the Federal and State constitutions that control its effect. This is taken to be the intention of the legislature which presumably undertakes to act only within its powers, and does not purposely violate or disregard controlling provisions of the constitution. Where a statute is absolute in its terms and does not expressly provide for exceptions or qualifications that under certain circumstances are necessary for the operation of the statute within constitutional bounds, the exceptions and qualifications may be implied by law, so as to give effect to the legislative intent, rather than to destroy the act, when it does not clearly appear that the law making power designed to exceed its powers or to disregard controlling provisions of the organic law. See Osborne v. State, 33 Fla. 162, 14 South. Rep. 588, 39 Am. St. Rep. 99, 25 L. R. A. 120; Seaboard Air Line Railway·v. Seegers, 207 U. S. 73, 28 Sup. Ct. Rep. 28.

These principles are applicable to rules lawfully adopted for the complete operation of a statute enacted for a public purpose.

In view of these considerations the absolute terms of Demurrage Rule 8 do not render the rule unreasonable or invalid, since it is not applicable under circumstances not within its legal purview. The rule cannot be enforced so as to materially burden interstate commerce, nor where there is a valid excuse for not complying with it, nor where the law provides or implies exceptions and qualifications to its operation, nor where its enforcement

would violate any controlling provision or principle of law.

It cannot be said that the rule is void for uncertainty where the certainty of its meaning and effect is the matter complained of. The rule does not appear to be unlawful or unreasonable.

The statute and the rule have a just relation to the regulation of intrastate transportation by common carriers, a proper subject of legislative classification and action, they are authorized by the laws of the State, they are applicable alike to all under similar circumstances, they do not appear to be unreasonable in their terms or operation, they do not impose unusual or undue or excessive burdens or restrictions upon rights secured by the organic law, they do not directly or materially burden interstate commerce, and, consequently when properly constructed and applied, they do not appear to deprive the carrier of property without due process of law, nor to deny to it the equal protection of the laws nor to interfere with the authority of Congress as to interstate commerce, in violation of the constitution or laws of the United States.

While the order imposing the penalty upon which the action is brought is by the statute made *prima facie* evidence of everything necessary to create the liability or to require the payment of the fine or penalty as imposed, yet as the declaration shows affirmatively that the penalty was imposed for refusing to pay liabilities to the shipper incurred under the rule, which are acts of omission that are not penal violations of the rule, the penalty was not lawfully imposed and consequently no cause of action is stated.

The statute and Demurrage Rule 8 are not invalid for the reasons urged against them; but as the declaration

affirmatively shows the penalty was imposed for acts or omissions that are not penal violations of the statute or of the rule, the demurrer to the declaration was properly sustained, though not on the ground stated by the trial court, and the judgment for the defendant on the demurrer should be affirmed.

SHACKLEFORD, C. J., and COCKRELL, HOCKER and PARKHILL, JJ., concur.

TAYLOR, J., concurs in the result.

TAYLOR, J.—(*Concurring in the judgment.*)—I concur in the final conclusions reached in the opinion prepared by Mr. Justice WHITFIELD as to the judgment to be entered here in said cause, but I do not concur in all that is said in such opinion in arriving at such conclusion. As I understand the holdings of the opinion the State of Florida nor its railroad commission has any authority to sue for, penalize for, or recover any sum that may become due from a carrier to a shipper as demurrage for an infraction by such carrier of demurrage rule number eight, but that if any suit or action becomes necessary to enforce any such liability, it can properly be brought only by the aggrieved shipper against the offending carrier. This conclusion being reached, and I think it is sound and proper, the case of the plaintiff in error is at an end, and necessarily falls to the ground, and all else that is discussed and said in the opinion as to the constitutionality, reasonableness and propriety of said rule eight and as to the power of the railroad commission to adopt and prescribe it, becomes purely a moot question and is *obiter dicta* not binding upon any one. If the State or the railroad commission have no right to

go into any court to collect, sue for or recover any alleged demurrage becoming due to a private individual shipper for an infraction by a carrier of such rule eight, then neither the State nor the commission can by any such unauthorized suit properly raise or present or have adjudicated any of the questions so lengthily discussed in the opinion touching the constitutionality, legality, merits or demerits of the rule which is the foundation for such suit by whomsoever brought.